**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RAMONA THURMAN BIVINS, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | **CIVIL ACTION NO.:** |
| vs. ) | |
| ) | |
| FELICIA FRANKLIN, in her individual ) | **JURY TRIAL DEMANDED** |
| and official capacities; ) | |
| ALIEKA ANDERSON, in her individual) | |
| and official capacities; ) | |
| GAIL HAMBRICK, in her individual ) | |
| and official capacities; and ) | |
| CLAYTON COUNTY, GEORGIA, ) | |
| ) | |
| ) | |
|     Defendants. ) | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW Plaintiff, Ramona Thurman Bivins ("Plaintiff" or "Ms. Bivins"), and files this Complaint for Damages and Injunctive Relief showing the Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff is a citizen of the State of Georgia and hereby submits herself to the jurisdiction of this Court.

1

2.     Defendant Felicia Franklin ("Franklin") is and, at all relevant times, was the District 3 Commissioner of the Clayton County Board of Commissioners. She is sued in both her individual and official capacities. Defendant Franklin may be served with summons and Complaint at her residence located at 1526 Iris Walk, Jonesboro, GA 30238.

3.     Defendant Alieka Anderson ("Anderson") is and, at all relevant times, was the District 1 Commissioner of the Clayton County Board of Commissioners. She is sued in both her individual and official capacities. Defendant Anderson may be served with summons and Complaint at her residence located at 5504 Martin Court, Ellenwood, GA 30294.

4.     Defendant Gail Hambrick ("Hambrick") is and, at all relevant times, was the District 2 Commissioner of the Clayton County Board of Commissioners. She is sued in both her individual and official capacities. Defendant Hambrick may be served with summons and Complaint at her residence located at 1656 Lauranceae Way, Riverdale, GA 30296.

5.     Defendant Clayton County, Georgia ("Clayton County" or "County") is subject to this Court's jurisdiction. The county may be served by delivering a copy of the Complaint and summons to Jeffrey E. Turner, Chairman of the Clayton County Board of Commissioners, at 112 Smith Street, Jonesboro, GA 30236.

6. Plaintiff's claims present federal questions of which this court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1343(a).

7. This Court has pendent jurisdiction over the additional claims alleged in this Complaint because they arise from a nucleus of operative fact common to those causes arising under 42 U.S.C. § 1983, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience, and fairness to the parties, pursuant to 28 U.S.C. §1367(a).

8. Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. §§ 1391(b)-(d) because Defendants reside in this judicial district, because Defendants resided in this District when a substantial part of the events giving rise to the claims herein occurred, and because Defendants' contacts in this District would be sufficient to subject it to personal jurisdiction if this District were a separate State.

## FACTS

### Ms. Bivins' Background and Employment at Clayton County

9. Ms. Ramona Bivins served as the Chief Financial Officer (CFO) for Clayton County Board of Commissioners from April 8, 2013, to June 7, 2022.

10. Ms. Bivins has over twenty-five years of experience in the areas of governmental accounting, budgeting, and finance. Prior to her tenure with Clayton

3

County, she worked for two of the largest school districts in Georgia, serving as the Budget Director and Interim Chief Financial Officer with the Clayton County Board of Education and as Director of Budget for the Atlanta Public Schools System, managing budgets nearing three quarter of a billion dollars.

11.    As CFO of Clayton County, Ms. Bivins was responsible for the Internal Audits and Finance Departments. The Finance Department includes accounting, budgets, accounts payable, accounts receivable, pension fund, grants, and treasury management units.

12.    In her role of CFO, she provided leadership in the development and the continuous evaluation of short and long-term strategic objectives for the Finance Department, including providing analysis of budgets, financial trends, and forecasts to the Chairman and the Board of Commissioners regarding the financial future of Clayton County. While CFO, she also served as a member of the Clayton County Public Employees' Pension Board, holding the office of Secretary of the Board.

13.    At all times relevant to this Complaint, Ms. Bivins' performance as CFO was exemplary, and she received consistently strong evaluations and regular merit pay raises during her tenure.

14.    At all times relevant to this Complaint, Ms. Bivins reported directly to Clayton County Board of Commissioners Chair Jeffrey Turner, who wrote her

4

performance evaluations. Year after year, Turner's evaluations of Ms. Bivins commended her reliability, strong communication skills, and ability to "meet with anyone" and explain complicated issues with clarity.

15.    These evaluations also noted that Bivins was "a good steward of the counties [sic] finances," that she steered Board members clear of problems, and that she was skilled at balancing the County's budget. Her most recent evaluation in March 2022 scored her performance as "above average," which merited her a 3.75% pay raise.

16.    Ms. Bivins' most recent contract with Clayton County was for a term starting July 1, 2019 and ending June 30, 2022 (the "Agreement").

17.    During the term of the Agreement, as permitted by the Agreement, Clayton County agreed to pay for and paid for Ms. Bivins' courses in the Leadership and Learning in Organizations program at Vanderbilt University ("Vanderbilt").

18.    Similarly, as permitted by their employment agreements with Clayton County, Clayton County also agreed to pay for and paid for university courses for other employees, including Clayton County Chief Operating Officer Dietrick Stanford ("COO" or "Mr. Stanford").

19.    Per the terms of the Agreement, upon termination of her employment, Clayton County promised to pay Ms. Bivins severance. The severance was to be six

months of her salary. (*See* Exhibit 1, Bivins Employment Agreement, p. 3, Section 7.)

20.     Ms. Bivins received raises since the Agreement was executed, and her salary at the time of her termination was $169,707.72.

### *Bivins' Husband's Campaign Activities for Commissioner DeMont Davis*

21.     At all times relevant to this Complaint, Ms. Bivins was married to Charlton Bivins ("Mr. Bivins").

22.     At all times relevant to this Complaint, Clayton County Commissioners Felicia Franklin, Alieka Anderson and Gail Hambrick knew that Ms. Bivins was married to Mr. Bivins.

23.     Throughout March, April, and May 2022, Mr. Bivins openly campaigned for the reelection of incumbent Clayton County Commissioner DeMont Davis, who was running against a candidate named Janice Scott ("Ms. Scott").

24.     At all times relevant to this Complaint, Defendants Franklin, Anderson and Hambrick knew that Mr. Bivins openly supported Commissioner Davis's reelection campaign.

25.     Throughout March, April, and May 2022, Clayton County Commissioners Franklin and Anderson, as well as suspended Clayton County

Sheriff Victor Hill, openly campaigned in support of Ms. Scott and against her opponent, Commissioner Davis.

26.     On May 22, 2022, Commissioner Davis called Mr. Bivins and alerted him that immediately after he placed his own Davis campaign signs in the ground, he observed campaign workers for Ms. Scott step out of a Janice Scott campaign vehicle and place yard signs in support of Ms. Scott, and he observed that his own signs had been taken. In response, Mr. Bivins encouraged Davis to call the police to report a suspected theft of Davis campaign signs by the Scott campaign workers and to follow the vehicle to inform the police of their location.

27.     City of Riverdale police were dispatched for a possible "45," or theft. The officer on the scene mistakenly assumed that the 45 was referring to a vehicle theft, and so when he pulled over the Scott campaign vehicle, he approached the car with a drawn weapon. The officer holstered his weapon once the two men showed their hands. None of Davis' signs were recovered from the Scott vehicle and the campaign workers were free to go.

28.     On May 23, 2022, Felicia Franklin personally emailed reporter Robin Kemp at the Clayton Crescent, a local newspaper, a copy of an audio recording. The recording included part of a phone call on May 22, 2022, between Commissioner Davis and Bruce Parks, Assistant Chief of the Clayton County Police Department,

which mentions Charlton Bivins by name and his efforts to locate the Scott campaign vehicle for the police.

29.    Clayton County Chief of Police Kevin Roberts stated to the Clayton Crescent that Felicia Franklin personally requested the audio recording that was provided to the Clayton Crescent.

30.    In the full audio recording, a police officer described the information he was receiving from Commissioner Davis and Charlton Bivins, repeatedly referring to Mr. Bivins as "Charlton" and "Bivins."

31.    The May 23, 2022 incident described above was reported in local media, including the Clayton Crescent, which specifically mentioned Mr. Bivins's involvement in the incident and noted that he was married to Ms. Bivins and that she was the CFO of Clayton County.

32.    Mr. Bivins was quoted in this article multiple times describing how he helped Davis and law enforcement find the Scott campaign vehicle by personally following it, and his allegiance to Davis and the Davis campaign was obvious.

33.    Mr. Bivins was also quoted in the article stating that he had given a statement to the police about the incident.

34.    On May 24, 2022, a link to the same audio recording was posted on Facebook and Twitter by Victor Hill's official accounts on those platforms.

8

35.     Hill's post on Facebook read:

"This Commissioner [Davis] recently blocked our law-enforcement
from receiving the full 23% raise that commissioner Franklin proposed.
Now he has called law-enforcement to use them for his campaign by
making false accusations that he saw his signs being stolen by campaign
workers for Janice Scott. This false report causes guns to be pointed at
innocent campaign workers."

36.     Hill's post on Twitter was similar:

"This Commissioner [Davis] recently blocked our law-enforcement
from receiving the full 23% raise that commissioner Franklin proposed.
Now he called to use them by making false accusations against his
opponents [sic] campaign workers. Vote for Janice Scott today!"

**<u>Bivins is terminated and denied contractually obligated severance</u>**

37.     At the Board of Commissioners meeting on Tuesday, June 7, 2022, on
the agenda was a call to renew Ms. Bivins' Agreement with the county for three
years.

38.     On her way into the meeting, Commissioner Franklin stated to
Commissioner Anderson, "It's going to be a good night tonight."

39.     When the agenda item arose regarding Ms. Bivins' contract renewal,
Commissioner Anderson interjected and asked to call a vote for the CFO's dismissal.
Turner told Anderson her request would be addressed after the vote on the contract
extension, which the majority of commissioners—Felicia Franklin, Alieka Anderson

and Gail Hambrick—then rejected. Soon after, the vote was called to dismiss Ms. Bivins.

40.     In a 3-2 vote, Ms. Bivins, who had been Clayton's CFO for nine years, was terminated by the Clayton Commission and ordered to have her belongings removed from her office by Thursday, June 9, 2022.

41.     In the same motion, the Board, led by Franklin, Anderson, and Hambrick, voted 3-2 to declare Ms. Bivins Agreement "*ultra vires*" and thereby void.

42.     Declaring Ms. Bivins' Agreement *ultra vires* was Franklin's, Anderson's, and Hambrick's attempt to create a legal basis for the County to refuse to pay Ms. Bivins $84,853.86 in severance payments pursuant to Ms. Bivins' Agreement.

43.     There was no legal justification provided for declaring Ms. Bivins' Agreement *ultra vires* at the June 7 Board meeting.

44.     When Commissioner Davis, who voted against termination, asked why Ms. Bivins was being fired, the Board members who favored her dismissal — Franklin, Anderson, and Hambrick — did not respond.

45.    In the meeting, Turner responded with disappointment at Ms. Bivins'
termination, stating, "It's ambush politics, and it just isn't right. . . . It's a shame this
is how we treat somebody after 10 years of honorable, loyal, and dedicated service."

46.    Turner asked the Board to reconsider their vote. He then questioned
where Bivins "had fallen down on the job," asking if there was a record of it. Neither
Anderson, Franklin, nor Hambrick commented or answered the question. Turner—
who authored Ms. Bivins' performance evaluations—said that there is no such
record, stating her evaluations have been outstanding the last several years.

47.    No further discussion took place on the record regarding the Board's
majority vote to terminate Bivins during the June 7 Board meeting.

48.    A few minutes after the meeting, Commissioners Franklin and
Anderson expressed glee at Ms. Bivins' termination and purportedly voided
Agreement. Franklin said to Anderson, "I can sleep good tonight." In response,
Anderson said, "Do I need to get us a bottle?"

49.    Neither the County, Franklin, Anderson, nor Hambrick have publicly
stated why Bivins was terminated.

50.    In contrast with their cold determination to dismiss Ms. Bivins without
providing any explanation, Anderson, Franklin, and Hambrick demonstrated support
for Ms. Bivins' job performance up until they publicly observed that Ms. Bivins'

11

husband was affiliated with Davis's reelection campaign and/or that Ms. Bivins' husband was "interfering" with Janice Scott's campaign activities and the suspected theft by her campaign workers. For example, Commissioner Anderson praised Ms. Bivins' work on the annual budget approximately two weeks before the sign incident occurred.

51.     Following the campaign sign incident, Anderson, Franklin, and Hambrick demonstrated a singular focus to use their power of elective office under color of state law to diminish the lives of Mr. and Ms. Bivins.

52.     The County, through Anderson, Franklin, and Hambrick, was motivated to terminate Ms. Bivins because she is married to Mr. Bivins and because Mr. Bivins and Ms. Bivins supported Commissioner Davis' election campaign.

53.     The County had no successor selected to take Ms. Bivins' place when she was terminated.

54.     The County assigned Ms. Bivins's duties to Deputy CFO, Budget and Special Projects Dennis Johnson, making him the Interim CFO.

55.     At the time Mr. Johnson was made Interim CFO, he had already announced his medical-related retirement to occur later in 2022, and Anderson and Franklin knew this.

56.    Due to the contentious work environment created in particular by Anderson and Franklin, Mr. Johnson chose to retire after just a few weeks serving as Interim CFO.

57.    As retribution for his perceived lack of loyalty, Anderson, Franklin, and Hambrick took action to revert Mr. Johnson's employment level to the level it was before he was Interim CFO, and thereby reduced his retirement payout.

**Anderson, Hambrick, and Franklin continue to retaliate after the termination**

58.    Following the vote to declare Ms. Bivins' Agreement terminated and *ultra vires*, Clayton County refused to pay Ms. Bivins any severance payments, and as of the date of the filing of this Complaint, she has not received any severance payments from Clayton County or its agents.

59.    Following Chairman Turner's vocal opposition to the retaliatory termination of Ms. Bivins, on June 21, 2022, Clayton County, led by Commissioners Anderson, Franklin, and Hambrick, voted to strip Chairman Turner of significant responsibilities as Chairman of the Board as retribution for speaking out against the politically motivated termination Ms. Bivins.

60.    Following her termination, Ms. Bivins filed for unemployment benefits with the Georgia Department of Labor ("DOL"), and the DOL approved her benefits.

61.    On August 11, 2022, shortly after the DOL approved Ms. Bivins' unemployment benefits, attorney M. Michelle Youngblood of Freeman, Mathis & Gary LLP, submitted a written appeal to the DOL on behalf of the County, in an effort to have the DOL deny Ms. Bivins' the benefits.

62.    As stated in Ms. Youngblood's letter, the purported basis of the County's unemployment appeal is that Ms. Bivins was, according to the County, a "contractor," and that her Agreement was declared *ultra vires* because the three-year term of that contract "bound future boards of commissioners in contravention of state law."

63.    The County's appeal of Ms. Bivins' unemployment benefits has no basis in fact or law.

64.    Ms. Bivins' Agreement is titled "EMPLOYMENT AGREEMENT" and identifies "Clayton County, Georgia" as "Employer" and Ramona Thurman Bivins as "Employee."

65.    For the duration of Ms. Bivins' work for the County, she received a Form W-2 each year from 2013 to 2021 as well as employment benefits that other County employees received, including employee health insurance and retirement.

66.   Current COO Detrick Stanford's contract also has a multi-year term (two years) and was voted on by the Board of Commissioners as it was previously comprised.

67.   Mr. Stanford's two-year contract was unanimously approved by the Board of Commissioners on October 5, 2021, which was comprised of Jeffrey Turner, DeMont Davis, Felisha Franklin, and Gail Hambrick.

68.   On October 19, 2021, an election was held for the District 1 Commissioner, as that seat was vacated by the death of Sonna Singleton Gregory.

69.   Alieka Anderson was the winner of the District 1 election, and she was sworn in as the District 1 Commissioner on November 2, 2021.

70.   Mr. Stanford's contract has not been declared *ultra vires* by the presently comprised Board of Commissioners.

71.   Notably, Ms. Bivins' first contract with the County as CFO was for a term beginning in 2013 and ending in 2016.

72.   From a period beginning in 2016 and ending in 2019, Ms. Bivins did not even have a contract while serving as CFO.

73.   Since the campaign sign incident, Anderson has sought all records of the County's payments to Vanderbilt for Ms. Bivins' tuition.

74.   The County, through Anderson, Franklin, and Hambrick, sought, and continues to seek, reimbursement for Ms. Bivins' tuition payments despite knowing that Ms. Bivins' Agreement permitted the County to pay Ms. Bivins' tuition for the Vanderbilt courses and despite knowing that Anderson's investigation into the matter revealed that the payments were not unauthorized.

75.   Clayton County COO Detrick Stanford also benefitted from the County paying for university courses, as Stanford took courses from the University of Georgia which were paid for by Clayton County.

76.   After Anderson asked Mr. Stanford to help her investigate Ms. Bivins' tuition payments, Mr. Stanford offered to pay the County back for his tuition payments. When Ms. Anderson heard about this, she told Mr. Stanford, **"You don't have to do that. We're only going after Ramona."**

77.   On September 6, 2022, the Board of Commissioners, led by Anderson, Franklin, and Hambrick voted 3-2 to "initiate procedures to recoup payments made to Vanderbilt University on behalf of former Clayton County Chief Financial Officer Ramona Bivins[.]"

78.   In a letter dated September 29, 2022, Clayton County Chief Staff Attorney, Charles Reed, demanded Ms. Bivins remit payment to the County for $37,402 within 30 days. This letter cited an audit report by Terminus Municipal

16

Advisors, LLC that purportedly found that "the County does not have a tuition reimbursement policy/program and that [Ms. Bivins'] contract did not authorize payments to Vanderbilt University for tuition/transcript fees."

79.     The audit report, which is two pages long, states as follows in its first two paragraphs:

> Terminus Municipal Advisors, LLC has recently been engaged to provide interim financial accounting support for the County. Early during our engagement, we were advised that the County made several direct payments to Vanderbilt University and were asked to review the County's policies and procedures to determine if the payments were properly authorized and paid.

> During the course of our review, we verified that several payments totaling $37,402.00 were made to Vanderbilt University for tuition/transcript fees over an eighteen (18) month period for an executive level employee. We also determined that a signed letter from a member of the executive management team allowed Vanderbilt University to bill/invoice the County directly for the fees described. Based on our review, it does not appear that proper authorization was received and the employee that signed the letter may not have been properly authorized to approve the billing/ invoicing and subsequent payments.

80.     The "signed letter from a member of the executive management team [that] allowed Vanderbilt University to bill/invoice the County directly for the fees described" is not described with particularity in the audit report, but it is referring to a letter of May 4, 2021, to "Vanderbilt University, Student Accounts, Nashville, Tennessee," "RE: Ramona Thurman Bivins ID#[REDACTED]." The letter reads:

"This letter serves as authorization to invoice Clayton County, GA, Attn: Falisha Smith, A/P Manager, 112 Smith St., Jonesboro, GA 30236 for course cost/tuition beginning May 2021 through December 2024." The letter is signed by COO Detrick Stanford.

81.    Chairman Turner expressly authorized COO Stanford to write the subject letter and submit it to Vanderbilt University.

82.    All tuition invoices made by Vanderbilt University to Clayton County regarding Ramona Bivins occurred between May 2021 and December 2024, the time period covered by Mr. Stanford's letter of authorization.

83.    Without any explanation, the audit report concluded, "it does not appear that proper authorization was received and the employee that signed the letter may not have been properly authorized to approve the billing/ invoicing and subsequent payments."

84.    Despite the audit report's finding that it does not "appear" that COO Stanford received authorization, he did, which the auditors could have learned by speaking to Mr. Stanford or Mr. Turner.

85.    Ms. Bivins relied to her detriment on the County paying her tuition payments for her Vanderbilt coursework.

86.     Any efforts by Clayton County to recover payments made to Vanderbilt on behalf of Ms. Bivins are barred by the voluntary payment doctrine, O.C.G.A. § 13-1-13.

**COUNT ONE**
**First Amendment Retaliation**
**Asserted Through 42 U.S.C. §1983**
*Against Defendants Clayton County and Anderson, Franklin, and Hambrick in their individual and official capacities*

87.     Plaintiff incorporates paragraphs 1 through 86 as if fully restated herein.

88.     The First Amendment to the Constitution of the United States of America prohibits governmental entities from retaliating against persons for engaging in speech and association protected by the First Amendment.

89.     The First Amendment to the Constitution of the United States of America prohibits governmental entities from retaliating against persons for engaging in intimate association and expressive association protected by the First Amendment.

90.     The First Amendment to the Constitution of the United States of America  protects  both actual and perceived political  speech  and  expression  by public employees and their intimate spouses.

91.     On and before May 22, 2022, Plaintiff's husband, Charlton Bivins, engaged  in  political  speech  and  political  association  by  openly  and  publicly

campaigning for Commissioner DeMont Davis and against Davis's opponent, Janice Scott.

92.     On and after May 23, 2022, Defendants Anderson, Franklin, Hambrick, and Clayton County learned that Mr. Bivins engaged in political speech and political association by openly and publicly campaigning for Commissioner Davis and against Davis's opponent, Ms. Scott.

93.     The political speech and political association of Plaintiff's husband constituted association and speech as a citizen on matters of public concern, which are protected by the First Amendment.

94.     Plaintiff engaged in association protected by the First Amendment by being married to her husband.[1]

95.     Plaintiff was qualified for her position as CFO, as evidenced by her years of positive performance evaluations.

96.     Despite Plaintiff's qualifications, Defendants took adverse action against Plaintiff.  For example, Defendants terminated Ms. Bivins, did not renew her

---

[1] *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984); *Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987); *Smith v. Price*, 616 F.2d 1371, 1376 (5th Cir. 1980); *McCabe v. Sharrett*, 12 F.3d 1558, 1562–63 (11th Cir. 1994).

Agreement, declared her Agreement *ultra vires,* refused to pay her contractually obligated severance, demanded payment for at least $37,402 for tuition payments promised to and paid on behalf of Plaintiff, and appealed her unemployment benefits.

97.    Defendants subjected Plaintiff to retaliation because she is married to Mr. Bivins and thereby engaged in associational expression. Defendants retaliated against Plaintiff by terminating her employment, voting to not renew her Agreement, voting to declare her Agreement *ultra vires*, refusing to pay her contractually obligated severance, demanding payment for at least $37,402 for tuition payments promised to and paid on behalf of Plaintiff, and appealing her unemployment benefits in bad faith, all on the basis of her exercise of federally protected rights.

98.    Plaintiff's above-pled constitutionally protected association was a motivating factor, a substantial factor, and the precise reason that Defendants terminated Ms. Bivins, did not renew her Agreement, declared her Agreement *ultra vires,* refused to pay her contractually obligated severance, demanded payment for at least $37,402 for tuition payments promised to and paid on behalf of Plaintiff, and appealed her unemployment benefits in bad faith.

99.    Defendants lack any legitimate justification for terminating Ms. Bivins, not renewing her Agreement, declaring her Agreement *ultra vires,* refusing to pay

her contractually obligated severance, demanding payment for at least $37,402 for tuition payments promised and paid on behalf of Plaintiff, and appealing her unemployment benefits, and/or any such purported legitimate justifications are a mere pretext for retaliation.

100.   Defendants cannot show by a preponderance of evidence that they would have taken the same adverse actions against Plaintiff in the absence of her protected association.

101.   The above-pled actions of Defendants constitute unlawful retaliation in violation of Plaintiff's rights under the First Amendment to the Constitution of the United States.

102.   The above-pled actions of Defendants were taken under color of state and local law.

103.   All the retaliation complained of herein violated Plaintiff's clearly established constitutional and statutory rights, rights of which any reasonable person would have known.

104.   At all times relevant to this Complaint, it was clearly established in the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, and/or

the appellate courts of the State of Georgia that Defendants' actions violated the First Amendment to the U.S. Constitution. [2]

105.   The actions of Defendants in subjecting Plaintiff to the retaliatory actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

106.   As a direct and proximate result of Defendants' violations of Plaintiff's First Amendment rights, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

107.   As a result of the above-pled violations of Plaintiff's First Amendment rights, Plaintiff is entitled to recover lost wages and economic benefits of her employment, and compensatory damages for emotional distress, as well as front pay and other equitable relief, and all other legal and equitable relief provided for by 42 U.S.C. 1988.

---

[2] *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984); *Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987); *Smith v. Price*, 616 F.2d 1371, 1376 (5th Cir. 1980); *McCabe v. Sharrett*, 12 F.3d 1558, 1562–63 (11th Cir. 1994).

## COUNT TWO
## BREACH OF CONTRACT
### *Against Defendant Clayton County*

108.   Plaintiff incorporates paragraphs 1 through 86 as if fully restated herein.

109.   Defendant Clayton County breached its contract with Plaintiff by failure to respect the terms of Agreement and pay the severance that Plaintiff was due.

110.   Defendant Clayton County's declaration of Plaintiff's Agreement as *ultra vires* was made in bad faith and was a transparent attempt to avoid paying Plaintiff the severance that she was due.

111.   Plaintiff relied to her detriment on Defendant Clayton County to continue her employment, or in the alternative honor its Agreement regarding her severance at separation.

112.   Defendant Clayton County's breach of contract proximately caused damage to Plaintiff in the form of loss of pay in the amount of $84,853.86 (eighty-four thousand eight hundred fifty-three dollars and eighty-six cents), plus interest.

113.   The conduct of Clayton County in refusing to pay Plaintiff severance she is entitled to under the terms of her contract as well as its aggressive pursuit of tuition reimbursement is in bad faith, is stubbornly litigious, and has caused Plaintiff

unnecessary trouble and expense thereby entitling Plaintiff to recover her attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

**COUNT THREE**
**Punitive Damages Under 42 U.S.C. §1983**
***Against Defendants Franklin, Anderson, and Hambrick their Individual Capacities***

114.   Plaintiff incorporates paragraphs 1 through 86 as if fully restated herein.

115.   The aforementioned actions of Defendants Franklin, Anderson, and Hambrick were taken in their individual capacities under color of state or local law.

116.   In taking these actions, Defendants Franklin, Anderson, and Hambrick did so in clear violation of statutory and Constitutional law.

117.   Defendants Franklin, Anderson, and Hambrick acted in reckless disregard for Plaintiff's constitutional rights.

118.   Because of Defendants Franklin's, Anderson's, and Hambrick's conduct, Plaintiff is entitled to punitive damages against them in their individual capacities.

119.   Defendants Franklin's, Anderson's, and Hambrick's retaliatory actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to the consequences. Accordingly, Plaintiff is entitled to punitive damages against them in their individual capacities.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Bivins demands a TRIAL BY JURY and the following relief:

(a) declare that Defendants have violated Plaintiff's rights under the federal statutes listed above;

(b) permanently enjoin Defendants from violating, in the future, Plaintiff's rights under any of the statutes listed above;

(c) permanently enjoin Defendants from seeking payment from Plaintiff for all payments made by Clayton County on behalf of Plaintiff;

(d) award Plaintiff full back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(e) award Plaintiff actual damages for Defendant Clayton County's breach of contract for unpaid severance in the amount of $84,853.86 (eighty-four thousand eight hundred fifty-three dollars and eighty-six cents), plus interest;

(f) award Plaintiff prejudgment interest as required by law;

(g) award Plaintiff compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

(h) award Plaintiff front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(i) award Plaintiff punitive damages against Defendants Franklin, Anderson, and Hambrick, in their individual capacities, sufficient to punish them for their unlawful conduct and deter them from repeating such conduct in the future, as determined by the enlightened conscience of a jury;

(j) award Plaintiff reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. §1988 and O.C.G.A. § 13-6-11; and

(k) grant such additional relief as may be just and proper.

Respectfully submitted this 17th day of October, 2022.

BUCKLEY BEAL LLP

/s/ Edward D. Buckley
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@buckleybeal.com
Andrew R. Tate
Georgia Bar No. 518068
atate@buckleybeal.com

600 Peachtree Street NE, Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101

*Counsel for Plaintiff*