## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **RAMONA THURMAN BIVINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION** |
| | ) | **NO: 1:22-cv-04149-WMR** |
| **FELICIA FRANKLIN, in her** | ) | |
| **individual and official capacities;** | ) | |
| **ALIEKA ANDERSON, in her** | ) | |
| **individual and official capacities;** | ) | |
| **GAIL HAMBRICK, in her** | ) | |
| **individual and official capacities;** | ) | |
| **and CLAYTON COUNTY,** | ) | |
| **GEORGIA** | ) | |
| **Defendants.** | ) | |

## DEFENDANTS GAIL HAMBRICK AND CLAYTON COUNTY, GEORGIA'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COME NOW, Gail Hambrick, in her individual and official capacities ("Commissioner Hambrick" or "Defendant Hambrick"), and Clayton County, Georgia, ("Clayton County" or "the County"), Defendants in the above-styled case, and, pursuant to Fed.R.Civ.P. 12(b)(6), file this brief in support of their motion to dismiss Plaintiff's Complaint, as it relates to the causes of action against Commissioner Hambrick and the County.

## I.   <u>INTRODUCTION</u>

Plaintiff brings claims against Commissioner Hambrick, in her individual and official capacities, and Clayton County, Georgia following several votes by the Clayton County Board of Commissioners ("the Board") that Plaintiff alleges were in retaliation for her husband's political activity.  Specifically, Plaintiff brings a First Amendment retaliation claim and a derivative punitive damage claim against Commissioner Hambrick. (Counts I and III).   Plaintiff also brings a First Amendment retaliation claim and breach of contract claim against Clayton County. (Counts 1 and II).

Plaintiff's First Amendment retaliation claim against Commissioner Hambrick in her *official capacity* should be dismissed because it is duplicative of Plaintiff's claim against Clayton County.   In turn, Plaintiff's First Amendment retaliation claim and derivative punitive damages claim against Commissioner Hambrick in her *individual* capacity should be dismissed not only because the Complaint contains insufficient allegations to support a First Amendment retaliation claim, but also because she is entitled to qualified immunity.

Plaintiff's First Amendment retaliation claim against Clayton County should also be dismissed because the County had no official policy or practice constituting a constitutional tort.  Plaintiff's breach of contract claim against Clayton County

should likewise be dismissed because Plaintiff's employment agreement with Clayton County was ultra vires and, therefore, null and void. For these and additional reasons set forth below, the Court should dismiss Plaintiff's claims against Defendants Hambrick and Clayton County in their entirety.

## II.   FACTUAL ALLEGATIONS

Plaintiff Ramona Bivins served Clayton County, Georgia as its Chief Financial Officer ("CFO") from April 8, 2013, until June 7, 2022.  (Doc. 1, ¶ 9). The five-member Board of Commissioners is the governing body of Clayton County, Georgia.  (Id., ¶ 5). The composition of the Board changed between 2019, the date the Board entered into the employment agreement ("Agreement") at issue in this case, and 2022, when the Board voted to declare the Agreement ultra vires and not to enter into another Agreement with Plaintiff.  (Id., ¶ 68).  At the time the relevant votes were taken (and currently), the Board was comprised of Defendants Anderson, Franklin and Hambrick, Commissioner DeMont Davis, and Commissioner Jeffrey Turner, who was the Chairman.  (Id., ¶¶ 2–4, 14, 23).  Three members of the Board constitute a majority. (Id., ¶ 39).

At the Board of Commissioners' meeting on June 7, 2022, at which all Commissioners were present, Chairman Turner called for a scheduled vote on the Agreement between the County and Plaintiff. (Id., ¶ 37). Plaintiff's Agreement was

for a term starting July 1, 2019 and ending June 30, 2022.  (Id., ¶ 17, Exhibit 1 to the Complaint). Three Commissioners – Defendants Franklin, Anderson and Hambrick – did not vote to enter into a new Agreement with Plaintiff.  (Id., ¶ 39). Defendant Anderson then made two motions: a motion to dismiss Plaintiff prior to the expiration of her term, and a motion to declare Plaintiff's Agreement ultra vires. (Id., ¶¶ 39–41).  Defendants Franklin, Anderson and Hambrick affirmatively voted for each of Defendant Anderson's motions. (Id.).

Plaintiff asserts that, among other terms, the Agreement authorized the County to pay for her to attend the Leadership and Learning in Organizations Program at Vanderbilt University amounting to a $37,402.00 expenditure for the County. (Id., ¶ 17).  Even assuming for purposes of this Brief that the Agreement was valid, however, the County only agreed to pay for "travel and subsistence expenses" for "short courses, institutes, and seminars that are necessary for [Plaintiff's] professional development and good of [Clayton County]."[1] (Exhibit 1 to the Complaint, Sec. 3).  Notwithstanding the Agreement's language, Plaintiff alleges that Chairman Turner authorized the $37,402.00 education expenditure. (Id., ¶ 81).  Plaintiff acknowledges that at a subsequent Board meeting, the Board voted

---

[1] As discussed below, Defendants deny that the Agreement was a valid contract.

to remove "significant responsibilities" from Chairman Turner and sought restitution of the $37,402.00 expense he had unilaterally authorized.  (Id., ¶¶ 59, 77, 81).

Plaintiff also asserts that the Agreement authorized severance for her if she was involuntarily removed from the CFO position. (Id., ¶ 19). Specially, the Agreement contemplated a lump sum payment of six months of Plaintiff's salary unless she either voluntarily resigned from the CFO position or was convicted of a felony. (Exhibit 1 to the Complaint, Sec. 7).  Plaintiff estimates that her salary was $169,707.71 and, therefore, she alleges that she is entitled to receive $84,853.86 in severance.   (Id., ¶¶ 20).   Following the Board's declaration that Plaintiff's Agreement was ultra vires, it has not paid Plaintiff's severance. (Id., ¶ 42).

Generally, Plaintiff alleges that the Defendants retaliated against her because her husband was campaigning for a candidate who was running against Commissioner Davis. (Id., ¶ 52). Although Plaintiff makes several conclusory allegations against "the Defendants," Plaintiff's specific allegations related to Defendant Hambrick's alleged motive to retaliate against Plaintiff are:

- Commissioner Hambrick knew that Ms. Bivins was married to Mr. Bivins (Id., ¶ 21); and

- Commissioner Hambrick "knew that Mr. Bivins openly supported Commissioner Davis's reelection campaign" (Id., ¶ 24).

No further substance is offered as to the claims against Commissioner Hambrick.  In essence, Plaintiff fails to allege with any specific facts that Commissioner Hambrick's vote was motivated in any way by Mr. Bivins's alleged political activity.

## III.   ARGUMENT AND CITATION OF AUTHORITY

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).  Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) ("a formulaic recitation of the elements of a cause of action will not do").

In determining whether a complaint survives a motion to dismiss, courts have applied a two-step analysis.  The review begins by identifying allegations within the complaint that are mere conclusions, "[as] [c]onclusory allegations are not entitled to the assumption of truth." Estate of May v. Fulton County, 2020 WL 5541086, at *3 (N.D. Ga. Aug. 13, 2020) (citing McCullough v. Finley, 907 F.3d 1324, 1333 (11th Cir. 2018)). Then, "'after disregarding conclusory allegations, [the Court] assume[s] any remaining factual allegations are true, [identifies the elements that the plaintiff must plead to state a claim] and determine[s] whether those allegations 'plausibly give rise to an entitlement to relief.'" Id. (quoting Finley, 907 F.3d at 1333) (alterations in original)). "[W]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (punctuation omitted).  This Court may also consider the applicable contract, which was attached to the Complaint, without converting this into a motion for summary judgment.[2]

---

[2] See Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999) (document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment if the attached document is: (1) central

**A.**  **Plaintiff's First Amendment Claim Against Defendant Hambrick in Her Official Capacity is Duplicative and Should be Dismissed. (Count I)**

Plaintiff's First Amendment retaliation claim against Defendant Hambrick in her official capacity should be dismissed as redundant. Official capacity claims are simply "another way of pleading an action against an entity of which an officer is an agent." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)).  That means that "[w]hen a plaintiff chooses to sue a local governmental entity directly, it is then merely superfluous . . . also to name as defendant the individual official acting in his or her official capacity." Payne v. DeKalb Cnty., 414 F.Supp. 2d 1158, 1179 (N.D. Ga. 2004).

Here, Plaintiff alleges that Commissioner Hambrick was acting "under color of state and local law" when she allegedly retaliated against Plaintiff.  (Doc. 1, ¶ 102).  Since Plaintiff has also sued the County for the same claim, it is "merely superfluous" for Plaintiff to name Hambrick in her official capacity.  Accordingly, Plaintiff's First Amendment retaliation claim against Commissioner Hambrick in her official capacity is duplicative and should be dismissed.

---

to the plaintiff's claim; and (2) undisputed); and Massih v. Jim Moran & Assoc.'s, Inc., 524 F. Supp. 2d 1324, 1328 (M.D. Ga. 2008) (considering contract when ruling on a motion for judgment on the pleadings and dismissing both contractual and tort claims arising out of the contract).

**B.** **Plaintiff's First Amendment Claim against Defendant Hambrick in Her Individual Capacity Should be Dismissed. (Count 1)**

    1.    The Complaint does not plead a plausible First Amendment claim against Defendant Hambrick.

Plaintiff fails to allege any plausible direct or inferential allegations supporting her First Amendment claim against Defendant Hambrick. To state a First Amendment retaliation claim, "a plaintiff must establish, among other things, a causal connection between the retaliatory action[] and the speech–i.e., that the defendant's retaliatory motive was the cause of the constitutional deprivation." Watkins v. Central Broward Regional Park, 799 Fed. Appx. 659, 664 (11th Cir. 2020). "Section 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). The Eleventh Circuit has identified "several relevant factors to consider when determining if a plaintiff's speech is a substantial motivating factor in [the employment action taken]." Polion v. City of Greensboro, 614 Fed. Appx. 396, 398-99 (11th Cir. 2015). These factors include whether the employer made comments connecting the termination to the protected speech, whether the employer provided varied explanations for the terminations, who initiated the proceedings against the employee, whether there was evidence of the employer's hostility, and whether the employer had a motive to retaliate. Id.

Plaintiff fails to plead <u>any</u> of these factors against Defendant Hambrick. Instead, the only facts Plaintiff alleges to support her allegation that Commissioner Hambrick had a retaliatory motive are (1) she knew that Plaintiff was married to Charlton Bivins, Plaintiff's husband; and (2) she knew that Mr. Bivens supported Commissioner Davis's reelection campaign.  (Doc. 1, ¶¶ 21, 24, 39–41). That is the extent of the allegations demonstrating Defendant Hambrick's alleged retaliatory motive upon which Plaintiff relies in her attempt to shoehorn Commissioner Hambrick into a First Amendment retaliation claim. Here, even taken as true for purposes of this Motion, Plaintiff's allegations fail to set forth even the minimal "threadbare recitals of the elements of a cause of action" under § 1983 against Defendant Hambrick that would support a plausible First Amendment retaliation claim against her.  <u>Iqbal</u>, 556 U.S. at 678.  Accordingly, Plaintiff's First Amendment claim against Defendant Hambrick should be dismissed.

       2.    <u>Defendant Hambrick has qualified immunity from Plaintiff's First Amendment retaliation claim.</u>

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established' statutory or constitutional rights of which a reasonable [official] would have known.'" <u>Marbury v. Warden</u>, 936 F.3d 1227, 1232 (11th Cir. 2019) (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002)).

Significantly, the immunity is "from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 525 (1985). As such, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991). To be entitled to qualified immunity, the defendants "must establish that "[they] were acting within the scope of [their] discretionary authority." Millspaugh v. Cobb Cnty. Fire and Emergency Svcs., No. 22-10132, (11th Cir. November 22, 2022), https://media.ca11.uscourts.gov/opinions/unpub/files/202210132.pdf. (Cleaned up). Here, Defendants were clearly "exercising the discretionary function of casting their votes" when they voted on the employment action at issue. See, e.g., Smith v. Lomas, 45 F.3d 402, 406 (11th Cir. 1995). Once the discretionary authority issue is resolved, the burden shifts to plaintiff to show that: (1) defendant violated her constitutional rights; and (2) defendant's conduct was prohibited by clearly established law. Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014).

To overcome qualified immunity, a plaintiff must point to specific actions of each defendant which violate clearly established law. Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997) ("Once an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff."). "This burden is not easily discharged: That qualified immunity protects government

actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." Jones v. Ward, 514 F. App'x 843, 846-47 (11th Cir. 2013).  The Eleventh Circuit has held "many times" that "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).  A "plaintiff cannot rely on general, conclusory allegations or broad legal truisms to show that a right is clearly established." Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994); White v. Pauly, 137 S. Ct. 548, 552 (2017) (reiterating the longstanding principle that clearly established law should not be defined at a high level of generality and must be particularized to the facts of the case.)  "The salient question in a qualified immunity analysis is whether the official had fair warning that their conduct was unlawful." Jackson v. Cowan, 2022 WL 3973705, *4 (11th Cir. September 1, 2022). (Cleaned up). The law can be clearly established for qualified immunity purposes only by decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court.  Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 823 n. 4 (11th Cir. 1997).[3]

---

[3] The Supreme Court recently reinforced this principle in Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 7-8 (2021) (reversing lower court's denial of qualified immunity).  In essence, a right is only clearly established when it is "sufficiently

As noted above, to establish a First Amendment retaliation claim "a plaintiff must establish, among other things, a causal connection between the retaliatory action[] and the speech–i.e., that the defendant's retaliatory motive was the cause of the constitutional deprivation." <u>Watkins</u>, 799 Fed. Appx.at 664; <u>Pickering v. Board of Education</u>, 391 U.S. 563 (1968); <u>Fikes v. City of Daphne</u>, 79 F.3d 1079, 1084-1085 (11th Cir.1996). Similarly, the Eleventh Circuit has identified the types of conduct that are indicative of retaliatory motive.  See <u>Polion</u>, 614 Fed. Appx. at 398-99; <u>see</u> Para. B, 1 above. Here, Plaintiff fails to allege that Commissioner Hambrick engaged in *any* suspect conduct that would support even an inference that her votes were motivated by an unconstitutional reason. Instead, on its face, the Complaint establishes that Commissioner Hambrick was merely concerned (rightly so) about the terms of Plaintiff's Agreement, which she believed to be ultra vires.  (<u>Id.</u>, ¶¶ 59, 77, 81).  Even under the forgiving standards of a motion to dismiss, Plaintiff has failed to connect the dots and establish that Commissioner Hambrick had a motive to retaliate based on protected speech, much less establish the requisite causal connection between an alleged motive and Commissioner Hambrick's votes. Commissioner Hambrick also did not violate any clearly established law.  Simply

---

clear that every reasonable official would have understood that what he is doing violates that right." <u>Mullenix v. Luna</u>, 577 U. S. 7, 11 (2015) (per curiam) (internal quotation marks omitted).

put, Commissioner Hambrick did not have "fair warning" that she was precluded from voting to end a contract she believed was ultra vires just because Plaintiff's husband was involved in a political campaign.  Therefore, Commissioner Hambrick is entitled to qualified immunity.

C.    **Plaintiff's Claims Against Clayton County, Georgia Fail. (Counts I and II)**

      1.    Plaintiff's First Amendment retaliation claim against Clayton County should be dismissed. (Count I)

Plaintiff's attempt to hold Clayton County liable for the votes related to her Agreement fails because Plaintiff cannot establish that the majority of the Commissioners were motivated by an unconstitutional motive. It is "well settled law" that a local government "may only be held liable under Section 1983 if action pursuant to official policy of some nature caused a constitutional tort."  Matthews v. Columbia Cnty., 294 F.3d 1294, 1297 (11th Cir. 2002). (Cleaned up); Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 690-694 (1978); and Khoury v. Miami-Dade Cnty. Sh. Bd, 4 F.4th 1118, 1131 (11th Cir. 2021) (to succeed on a Monell claim, a plaintiff must show that the "municipality itself," through a policy or practice, "cause[d] the constitutional violation."). In the case of an entity, like Clayton County, official policy can only be shown by a majority of the final decisionmakers.  Mathews, 294 F.3d at 1297 (citing Mason v. Village of El Portal,

240 F.3d 1337, 1339 (11th Cir. 2001) (summary judgment granted to municipality when plaintiff failed to establish majority of the voting members were acting on an unconstitutional motive)); Church v. City of Huntsville, 30 F.3d 1332, 1343 (11th Cir. 1994) (comments of one councilman not enough to establish the council had an unconstitutional policy)); See also Smith v. Cobb Cnty. School District, 1:10-CV-848-TWT, 2013 WL 4028856, at *5 (N.D. Ga. August 7, 2013) (plaintiff failed to show that a majority of the Board approved her termination in retaliation for protected speech). Unconstitutional motive cannot be imputed or inferred from one member of a group to all members of the group. Matthews, 294 F.3d at 1297. Instead, a plaintiff must demonstrate that every voting member of the majority not only knew of the unconstitutional motive of the other member, but also that unconstitutional reason motivated the voting member. Id. at 1298; Smith, 2013 WL 4028856, at *6. If a plaintiff cannot establish that a majority of voters were "actually motivated by an unconstitutional consideration," the local government body has no liability under § 1983. Matthews, 294 F.3d at 1298.

Here, Commissioner Hambrick does not possess final policymaking authority by herself. Instead, that authority rests with the five member Clayton County Board of Commissioners, with official policy being enacted by, at a minimum, a majority vote of three commissioners. Three Commissioners, Hambrick, Anderson and

Franklin, cast the votes at issue in this case.  Although Plaintiff has named each of

those Board Members as defendants, as noted above, she has not sufficiently pled a

First Amendment retaliation case against Commissioner Hambrick. Critically, at

most, Plaintiff can only establish that Commissioner Hambrick joined the votes–not

that she was motivated to do so by an unconstitutional reason.  Commissioner

Hambrick, then, cannot be part of the majority allegedly voting for an alleged

unconstitutional reason, leaving only two votes allegedly cast for unconstitutional

reasons. Plaintiff, therefore, cannot show that a majority of the Board voted against

her in retaliation for her husband's campaign activities. Plaintiff's failure to show an

alleged constitutional violation by a majority of the Board necessarily means that

there was no unconstitutional "official policy" by the County, and no resulting

liability for the County.  Accordingly, as the claim against Defendant Hambrick

fails, so too does the claim against Clayton County.

> 2.    Plaintiff's Breach of Contract Claim fails because her Agreement with Clayton County was void.

Plaintiff's breach of contract claim fails for the simple reason that Plaintiff's

Agreement with Clayton County was ultra vires and, therefore, void.  Georgia law

provides that "One council may not, by an ordinance, bind itself or its successors so

as to prevent legislation in matter of municipal government." O.C.G.A. § 36-30-3(a).

"[T]he principle stated in O.C.G.A. § 36-30-3 applies to counties as fully as it applies

to municipalities."   <u>Madden v. Bellow</u>, 260 Ga. 530, 531 (1990).   Further, this prohibition extends not only to ordinances, but also to "the execution of governmental contracts." <u>City of McDonough v. Campbell</u>, 289 Ga. 216, 217 (2011) (citing <u>Ledbetter Bros. v. Floyd Cnty</u>, 237 Ga. 22, 24 (1976)).   "To the extent a governmental contract impinges on a municipality's ability to legislate freely, the contract is ultra vires and void." <u>Campbell</u>, 289 Ga. at 217.

In <u>Campbell</u>, the City approved a contract for an employee that provided, among other terms, for automatic renewals every twelve months and, in the event the City terminated the contract, twelve months of severance pay, which equated to $55,432.00. <u>Id.</u> at 216. The year following the City's authorization of that contract, new council members took office and subsequently declared the employee's contract null and void and refused to pay severance.  Following a jury verdict in favor of the employee, the Georgia Supreme Court reversed the judgment, finding that the contract was ultra vires and void. <u>Id.</u> at 219. In reaching its decision, the Court reiterated that "[s]trictest scrutiny must be given to governmental actions which require increased appropriations or taxes by future governing authorities." <u>Id.</u> at 217. It also noted that "the employment contract between the city and Campbell restricts the ability of a successor council to terminate [the employee's] employment and to enter an agreement with others because the severance provision renders the cost of

terminating the contract exorbitant." Id. at 218.  The Court found the "substantial financial obligation on the party of the City" to be a significant factor in determining that the contract was ultra vires and void. Id. at 219.

The similarities between Campbell and the instant case are unmistakable. Plaintiff's Agreement bound Clayton County to a multi-year contract and remained in effect through changes in the composition of the Board. (Exhibit 1 to Plaintiff's Complaint).  In other words, the Board that cast the votes at issue in this case was not the same Board that allegedly authorized Plaintiff's Agreement.  (Doc. 1, ¶¶ 67–69). Similarly, like Campbell, Plaintiff's Agreement contained a lump sum, buy-out provision if Plaintiff's Agreement was not renewed.  (Exhibit 1 to the Complaint, ¶ 7).  Specifically, the Agreement obligated the County to pay Plaintiff "compensation for a period of six (6) months following the termination," which Plaintiff alleges equates to $84,853.86.  (Id.). Thus, as in Campbell, whether the price of terminating Plaintiff's Agreement is called "exorbitant" or "substantial," it clearly restricted the Board's ability to terminate her employment and enter an agreement with others. Following Georgia precedent, therefore, Plaintiff's Agreement exceeded the Board's statutory authority and was ultra vires and void.   Accordingly, Plaintiff's breach of contract claim, which seeks the very relief that renders the contract void, fails.

**D.**   **Plaintiff's Claims for Punitive Damages and Attorney's Fees Should be Dismissed.** (Count III)

Should the underlying claims against the Defendants be dismissed, Plaintiff's claims for punitive damages and attorney's fees under O.C.G.A. § 13-6-11 would also be subject to dismissal as well.   See J. Andrew Lunsford Properties, LLC v. Davis, 257 Ga. App. 720, 722, 572 S.E.2d 682, 685 (2002) ("[T]he claims seeking attorney fees and punitive damages were properly dismissed as derivative of the other dismissed claims."); OFS Fitel, LLC v. Epstein, Becker & Green, P.C., 549 F.3d 1344, 1357 (11th Cir. 2008) (finding that plaintiffs' claims for punitive damages and attorney's fees cannot survive without an underlying claim against defendants).   Additionally, there are no factual allegations in the complaint of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences" or bad faith or stubborn litigiousness to justify an award of punitive damages or attorney's fees under state law. Nor are there any factual allegations of "malice" or "reckless indifference" to Plaintiff's federally protected rights that would justify an award of punitive damages against Defendants under federal law. See Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999) (stating that "malice or . . . reckless indifference to the [plaintiff's] federally protected rights" justifies an award of punitive damages under Section 1983); Reynolds v. CSX Transportation, Inc., 115

F.3d 860, 869 (11th Cir. 1997).  Therefore, Plaintiff's claims for punitive damages and attorney's fees should be dismissed.

## IV.  <u>CONCLUSION</u>

For all the reasons set forth above, Gail Hambrick and Clayton County, Georgia's Motion to Dismiss should be granted, and all of Plaintiff's claims pled against them (Counts I–III) should be dismissed.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Kirsten S. Daughdril*
Jack R. Hancock
Georgia Bar No. 322450
Jack.hancock@fmglaw.com
Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com
John D. Bennett
Georgia Bar No. 059212
jbennett@fmglaw.com
Kirsten S. Daughdril
Georgia Bar No. 633350
Kirsten.daughdril@fmglaw.com

*Attorneys for Defendants Clayton County, Georgia and Gail Hambrick*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
T:  770.818.0000
F:  770.937.9960

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(C) (Times New Roman font, 14-point).

This 5th day of December, 2022.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Kirsten S. Daughdril*
Kirsten S. Daughdril
Georgia Bar No. 633350

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
T:  770.818.0000
F:  770.937.9960
E: Kirsten.daughdril@fmglaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANTS GAIL HAMBRICK AND CLAYTON COUNTY, GEORGIA'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to all counsel of record who are CM/ECF system participants.

This 5th day of December, 2022.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Kirsten S. Daughdril*
Kirsten S. Daughdril
Georgia Bar No. 633350

*Attorney for Defendants Clayton County, Georgia and Gail Hambrick*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
T: 770.818.0000
F: 770.937.9960
E: Kirsten.daughdril@fmglaw.com