## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| RAMONA THURMAN BIVINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: |
| vs. | ) | 1:22-cv-04149-WMR |
| | ) | |
| FELICIA FRANKLIN, in her individual | ) | **JURY TRIAL DEMANDED** |
| and official capacities; | ) | |
| ALIEKA ANDERSON, in her individual | ) | |
| and official capacities; | ) | |
| GAIL HAMBRICK, in her individual | ) | |
| and official capacities; and | ) | |
| CLAYTON COUNTY, GEORGIA, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS CLAYTON COUNTY'S AND GAIL HAMBRICK'S MOTION TO DISMISS

COMES NOW, Plaintiff Ramona Bivins ("Ms. Bivins"), and files her response in opposition to the Motion to Dismiss filed by Defendants Gail Hambrick and Clayton County (the "County") (Doc. 22), showing the Court as follows:

## I.  INTRODUCTION

Defendants' motion to dismiss is a desperate, politically motivated effort to keep Ramona Bivins' well-pled allegations from the bright light of discovery. Contrary to Defendants' arguments, Plaintiff stated plausible claims against Hambrick and the County for First Amendment Retaliation in violation of her right

1

to intimate association with her husband, Charlton Bivins, and Hambrick had fair notice that her conduct violated clearly established law, thereby precluding her from receiving qualified immunity. Plaintiff also stated a plausible claim against the County for breach of contract, and the County's efforts to dismiss this claim without the benefit of discovery should be denied.

## II.     ARGUMENT AND CITATION OF AUTHORITY

When confronted with a motion to dismiss, Plaintiff carries the burden of demonstrating that her facts amount to a plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). This is accomplished by pleading "enough facts to raise a reasonable expectation that discovery will reveal evidence…" to support the claim at issue. *Id*. In other words, a plaintiff must plead enough facts to plausibly suggest that the claim is viable.  *Id*. at 557. In *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) the Supreme Court reenforced the 'plausibly suggests' standard: A complaint must only "plausibly suggest an entitlement to relief." *Id*. at 681. Moreover, to plausibly suggest that a particular claim is viable does not require a surplus of well-pled facts; Fed. R. Civ. P. 8(a)(2) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief…." Indeed, Fed. R. Civ. P. 8(a)(2) has created a fair-notice standard for complaints and thus only necessitates "short and plain statements" that "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. This is to say that Fed.

R. Civ. P. 8(a)(2) does not require an "exposition of [Plaintiff's] legal argument" and "need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer,* 562 U.S. 521, 530 (2011).

A complaint challenged under Rule 12(b)(6) does not have to plead detailed factual allegations, and there is no requirement of "heightened fact pleadings of specifics." *Twombly*, 550 U.S. at 555, 570. In addition, there exists an assumption that all factual allegations in the Complaint are true, and all reasonable inferences derived from those facts must be drawn in Plaintiff's favor. *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). In sum, the plausibility standard requires only that Plaintiff "nudge [her] claims across the line from conceivable to plausible," pleading enough facts to support the claim at issue. *Twombly*, 550 U.S. at 556.

## A. Plaintiff stated a First Amendment Retaliation claim against Hambrick

The First Amendment protects the right of intimate association, which is "the freedom to choose to enter into and maintain certain intimate human relationships," and it is protected from undue government intrusion "as a fundamental aspect of personal liberty." *Gaines v. Wardynski*, 871 F.3d 1203, 1212 (11th Cir. 2017) (citing *McCabe v. Sharrett*, 12 F.3d 1558, 1562–63 (11th Cir. 1994)). The U.S. Supreme Court and the Eleventh Circuit have long recognized that "[a]t a minimum, the right of intimate association encompasses the personal relationships that attend

the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *McCabe,* 12 F.3d at 1563 (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 619, 104 S.Ct. 3244, 3250, 82 L.Ed.2d 462 (1984)). Accordingly, a public employee cannot be subjected to an adverse employment action for exercising her First Amendment right to intimate association. *Gaines*, 871 F.3d at 1213. *See also Cummings v. DeKalb Cnty.,* 24 F.3d 1349, 1354 (11th Cir. 1994); *Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987).

In their motion, Defendants ask this Court to ignore Plaintiff's well-pled facts and then apply summary judgment standards to their motion to dismiss.[1] Fundamentally, Rule 8 does not require Plaintiff's Complaint to contain an "exposition of [Plaintiff's] legal argument" and "need not pin plaintiff's claim for relief to a precise legal theory." *Skinner,* 562 U.S. at 530. Despite this, Defendants claim that Plaintiff "failed" to plead "any" of the Eleventh Circuit's factors regarding whether the decision to terminate Plaintiff was a "substantial motivating factor." (Doc. 22-1 (citing *Polion*, 614 F. App'x at 398-99).) Fatal to Defendants' argument is the fact that the factors that Defendants cite are an *evidentiary analysis of*

---

[1] Defendants cite *Watkins v. Cent. Broward Reg'l Park*, 799 F. App'x 659, 666 (11th Cir. 2020), and *Polion v. City of Greensboro*, 614 Fed. Appx. 396, 398-99 (11th Cir. 2015), both of which were decided at summary judgment.

*causation* that the *Polion* opinion expressly described as "questions of fact to be resolved by the jury unless there is no factual dispute." *Polion*, 614 F. App'x at 398. In a recent unpublished opinion involving a retaliation claim for exercising intimate association rights, the Eleventh Circuit also explained the summary judgment standard as requiring the Plaintiff to show that the "associational activity was a substantial or motivating factor in the employer's retaliatory action, and, if so, whether *a preponderance of evidence* supports the conclusion that the adverse action would not have occurred in the absence of the associational activities." *Boudreaux v. McArtor*, 681 F. App'x 800, 803 (11th Cir. 2017) (emphasis added).[2] As such, the "motivating factor" analysis is premature at the pleadings stage. [3]

_____

[2] If the employee makes this initial showing, then, the court applies the balancing test from *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), which "involves the weighing of the employee's interest in the exercise of a constitutional right against the employer's interest in maintaining an efficient workplace." *See Shahar v. Bowers*, 114 F.3d 1097, 1103, 1112 (11th Cir. 1997).

[3] The factors in this evidentiary analysis include (1) whether termination closely followed the protected speech; (2) whether the employee showed that other explanations for the termination were pretextual; (3) whether the employer made comments connecting the termination to protected speech; (4) whether the employer provided varied explanations for the termination; (5) who initiated termination proceedings against the employee; (6) whether there was evidence of management's hostility; and (7) whether the employer had a motive to retaliate. *Id.* at 398–99 (citing *Stanley v. City of Dalton,* 219 F.3d 1280, 1291 (11th Cir.2000) (also a summary judgment opinion)). The Eleventh Circuit maintains that "[n]o one factor is outcome determinative, and the employee's burden is not a heavy one." *Id.* at 399.

To state a claim for violation of the First Amendment right to intimate association, Ms. Bivins was required to plead facts that show that "the asserted right is protected by the Constitution—which... the right to freedom of intimate association is—and that [ ] she suffered adverse action for exercising that right." *See Teblum v. City of Cape Coral Charter Sch. Auth.,* No. 2:20-CV-547-JLB-MRM, 2021 WL 1172910, at *6 (M.D. Fla. Mar. 29, 2021) (quoting *Gaines*, 871 F.3d at 1212–13). While Plaintiff was not required to plead any of the factors in the *Polion* court's evidentiary analysis, Plaintiff pled, *inter alia*, the following compelling facts regarding Hambrick and her motivation to retaliate against Ms. Bivins due to her marriage to Charlton Bivins:

- "At all times relevant to this Complaint, Clayton County Commissioners Felicia Franklin, Alieka Anderson and Gail Hambrick knew that Ms. Bivins was married to Mr. [Charlton] Bivins." (Doc. 1 at ¶¶ 21-22.)

- "Throughout March, April, and May 2022, Mr. Bivins openly campaigned for the reelection of incumbent Clayton County Commissioner DeMont Davis, who was running against a candidate named Janice Scott ("Ms. Scott")." (*Id*. at ¶ 23.)

- "Throughout March, April, and May 2022, Clayton County Commissioners Franklin and Anderson, as well as [former] Clayton County Sheriff Victor Hill, openly campaigned in support of Ms. Scott and against her opponent, Commissioner Davis." (*Id*. at ¶ 25.)

- On May 22, 2022, Mr. Bivins assisted Commissioner Davis and local police regarding a suspected theft of Davis campaign signs by Scott campaign workers, and the public record of this assistance was well known after (1) Victor Hill, with the assistance of Defendant Franklin, published on May 24, 2022, the police dispatch call in which Mr. Bivins was described by name, and (2) after the Clayton Crescent published an article on May 23, 2022, that specifically mentioned Mr. Bivins' support of and assistance to Mr. Davis / Mr. Bivins' opposition to Ms. Scott, as well as his marriage to Ms. Bivins. (*Id*. at ¶¶ 26-34.)

- At its monthly meeting on June 7, 2022—two weeks after the campaign sign incident—the Board of Commissioners, in a 3-2 vote led by Defendants Hambrick, Franklin, and Anderson, voted to terminate Ms. Bivins' contract with the County and declare it ultra vires. (*Id*. at ¶¶ 37-41.)

- "Declaring Ms. Bivins' Agreement *ultra vires* was Franklin's, Anderson's, **and Hambrick's** attempt to create a legal basis for the County to refuse to pay Ms. Bivins $84,853.86 in severance payments pursuant to Ms. Bivins' Agreement." (*Id*. at ¶ 42 (emphasis added).)

- "There was no legal justification provided for declaring Ms. Bivins' Agreement *ultra vires* at the June 7 Board meeting." (*Id*. at ¶ 43.)

- "When Commissioner Davis, who voted against termination, asked why Ms. Bivins [the County's CFO for nearly 10 years] was being fired, the Board members who favored her dismissal —Franklin, Anderson, and Hambrick — did not respond." (*Id*. at ¶ 44.)

- "[Chairman Jeffrey] Turner asked the Board to reconsider their vote. He then questioned where Bivins 'had fallen down on the job,' asking if there was a record of it. Neither Anderson, Franklin, nor Hambrick commented or answered the question. Turner—who authored Ms. Bivins' performance evaluations—said that there is no such record, stating her evaluations have been outstanding the last several years." (*Id*. at ¶ 46.)

- "Neither the County, Franklin, Anderson, nor Hambrick have publicly stated why Bivins was terminated." (*Id*. at ¶ 49.)

- "In contrast with their cold determination to dismiss Ms. Bivins without providing any explanation, Anderson, Franklin, ***and Hambrick*** demonstrated support for Ms. Bivins' job performance up until they publicly observed that Ms. Bivins' husband was affiliated with Davis's reelection campaign and/or that Ms. Bivins' husband was 'interfering' with Janice Scott's campaign activities and the suspected theft by her campaign workers. For example, Commissioner Anderson praised Ms. Bivins' work on the annual budget approximately two weeks before the sign incident occurred." (*Id*. at ¶ 50 (emphasis added).)

- "Following the campaign sign incident, Anderson, Franklin, ***and Hambrick*** demonstrated a singular focus to use their power of elective office under color of state law to diminish the lives of Mr. and Ms. Bivins." (*Id*. at ¶ 51 (emphasis added).)

- "The County, through Anderson, Franklin, ***and Hambrick***, was motivated to terminate Ms. Bivins because she is married to Mr. Bivins and because Mr.

Bivins and Ms. Bivins supported Commissioner Davis's election campaign." (*Id.* at ¶ 52 (emphasis added).)

- "Following Chairman Turner's vocal opposition to the retaliatory termination of Ms. Bivins, on June 21, 2022, Clayton County, led by Commissioners Anderson, Franklin, **and Hambrick**, voted to strip Chairman Turner of significant responsibilities as Chairman of the Board as retribution for speaking out against the politically motivated termination Ms. Bivins." (*Id.* at ¶ 59 (emphasis added).)

- "The County, through Anderson, Franklin, **and Hambrick**, sought, and continues to seek, reimbursement for Ms. Bivins' tuition payments despite knowing that Ms. Bivins' Agreement permitted the County to pay Ms. Bivins' tuition for the Vanderbilt courses and despite knowing that Anderson's investigation into the matter revealed that the payments were not unauthorized." (*Id.* at ¶ 74 (emphasis added).)

- "After Anderson asked Mr. Stanford to help her investigate Ms. Bivins' tuition payments, Mr. Stanford offered to pay the County back for his tuition payments. When Ms. Anderson heard about this, she told Mr. Stanford, **'You don't have to do that. We're only going after Ramona.'**" (*Id.* at ¶ 76 (underlined emphasis added).)

- It is a reasonable inference that "We," as used by Anderson in ¶ 76, referred to *Anderson, Franklin, and Hambrick*, as they were the commissioners that voted 3-2 to go after Ms. Bivins, and not Mr. Stanford, for tuition payments. (*Id.* at ¶ 77.)

While Plaintiff was not required to forecast how every fact in discovery will support each of the causation factors in an evidentiary analysis, as this is necessarily a question for summary judgment (at the earliest), Plaintiff's Complaint contained

ample facts that allege Defendant Hambrick maintained an unconstitutional motive and was personally involved in the decisions to terminate and otherwise retaliate against Ms. Bivins because she was married to Charlton Bivins, thereby stating a §1983 claim against Hambrick for First Amendment Retaliation. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (personal involvement in the constitutional tort is sufficient to allege causation under § 1983); *Gaines*, 871 F.3d at 1212–13. Because Plaintiff met her burden under Rule 8, Defendant Hambrick's motion to dismiss Plaintiff's First Amendment Retaliation claims should be denied.

## B. Hambrick is not entitled to Qualified Immunity

Hambrick spends considerable time reciting the qualified immunity standard, then concludes, ignoring the law and Plaintiff's well-pled factual allegations, that Hambrick did not have fair warning that she was precluded from "voting to end a contract she believed was ultra vires just because Plaintiff's husband was involved in a political campaign." Hambrick's argument is severely flawed, as it incorrectly defines the constitutional right at issue and asks this Court to make extreme inferences in her favor with respect to what she "believed," without the benefit of discovery and in defiance of the standard for a motion to dismiss.

In ruling on qualified immunity, a court must first determine whether the complaint, taken in the light most favorable to the plaintiff, alleges facts which, if proven, would show that the public official violated a constitutional right. *Saucier v.*

*Katz,* 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If no constitutional right could have been violated, then there is no need to proceed to the second step. *Id.* Thus, as other courts have noted, a determination on a motion for failure to state a claim and the first step of the qualified immunity analysis merge when presented in a Rule 12(b)(6) motion. *GJR Investments, Inc. v. County of Escambia, Florida,* 132 F.3d 1359, 1366 (11th Cir.1998). If a court finds that a constitutional right was violated, then the court must determine whether that right was clearly established in light of the specific context of the case. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151.

Here, Plaintiff pled that she had the right to be married to her husband due to the First Amendment's protections for intimate association, and that Hambrick's, Anderson's, and Franklin's acts of terminating her from her government job and otherwise retaliating against her, all because of her marriage, violated that right. (Doc. 1 at ¶¶ 87-107.) In performing the qualified immunity analysis, the Eleventh Circuit has stated as follows:

> The question in this case is not whether there is a First Amendment right to intimate association; there is. Nor is the question whether a public employee can be subjected to an adverse employment action for exercising that right; she can't. Nor is the question whether the employee will prevail if the adverse action infringed on her right to intimate association; she will.

*Gaines*, 871 F.3d at 1213.[4] The instant case rests on firm precedent from the U.S. Supreme Court and the Eleventh Circuit that engaging in adverse employment action against an employee because of their intimate relationship, such as marriage, violates the employee's right to intimate association. *See, e.g., Id*.; *Roberts*, 468 U.S. at 617–18, 622; *McCabe,* 12 F.3d at 1563; *Cumming,* 24 F.3d at 1354; *Rotary Club of Duarte*, 481 U.S. 537.

As stated in section II(A), *supra*, Plaintiff sufficiently pled that Hambrick violated the First Amendment when she voted to terminate Ms. Bivins and otherwise retaliate against her because Ms. Bivins was married to Charlton Bivins. (Doc 1 at ¶¶ 21-34, 37-52, 59, 74, 76, *inter alia*.) In her Complaint, Plaintiff also cited binding U.S. Supreme Court and Eleventh Circuit caselaw to demonstrate that Defendants' First Amendment violations were clearly established. (Doc. 1 at n. 1-2 (citing *Roberts*, 468 U.S. 609; *Rotary Club of Duarte*, 481 U.S. 537; *McCabe,* 12 F.3d at 1562-63).) Hambrick completely ignores this caselaw in her brief. Indeed, it was clearly established in June 2022 that terminating or otherwise engaging in adverse action against a government employee because of who that employee chose to marry

---

[4] The *Gaines* court went on to define the constitutional right in that case more specifically and found that it was not clearly established that it will violate the First Amendment's freedom of association right when a public employer fails to promote an employee because the employee's *father* engaged in protected speech. *Id*.

(let alone that her husband was engaged in political speech) violated the First Amendment's right to freedom of association, and Hambrick is not entitled to qualified immunity. *See Id.*

To support its arguments, Defendants improperly ask this court to ignore Plaintiff's factual allegations and thereby defy the Rule 12(b)(6) standard. For example, Hambrick claims that "on its face, the Complaint establishes that Commissioner Hambrick was merely concerned (rightly so) about the terms of Plaintiff's Agreement, *which she believed to be ultra vires*." (Doc. 22-1 at p. 13 (emphasis added).) There are so many things wrong with this statement. Foremost, Plaintiff's Complaint pled a host of facts to support her claim that Hambrick, in addition to the other two Defendant Commissioners, retaliated against Plaintiff expressly because she was married to Mr. Bivins. (Doc 1 at ¶¶ 21-34, 37-52, 59, 74, 76, *inter alia*.) Second, Hambrick's beliefs or state of mind are not yet before the Court, as discovery has not yet commenced. Third, implicit in Hambrick's argument is a request for this Court to grant her the extraordinary inference that she "believed" Plaintiff's contract was in fact ultra vires—and that she had no unconstitutional motivation for voting lock-step with the others—and granting Defendant Hambrick *any* inferences is improper under the standard for a motion to dismiss. No doubt, Defendant Hambrick's state of mind during her numerous acts of retaliation is a

subject of significant, forthcoming discovery, and the fact that Hambrick's threadbare legal argument relies so heavily on her state of mind demonstrates why Defendants' motion to dismiss is premature. Finally, the improper inference that Hambrick seeks is belied by Plaintiff's well-pled facts. For example, in the Complaint, Plaintiff pled that COO Dietrick Stanford *also* had a contract that was initiated by a formerly comprised Board of Commissioners, and that Mr. Stanford's contract has never been declared ultra vires. (Doc. 1 at ¶¶ 66-70.) In addition, the Defendant commissioners did not even vote to declare Plaintiff's contract ultra vires until *after* seeking to prematurely hold a vote to terminate her and voting against renewing her contract. (*Id.* at ¶¶ 39-41.) All three Defendant commissioners then refused to answer their fellow commissioners or the public to explain why Ms. Bivins was being thrown to the street after 10 years of loyal service and high performance. (*Id.* at ¶¶ 46-47, 49-50.) These commissioners' bellowing collective silence begs the question: if Hambrick (or any of these commissioners) had a sound legal basis for voiding Plaintiff's contract that she suddenly felt compelled to act on without any warning, why would she remain silent when asked for her rationale by fellow commissioners or the public?

Hambrick was on fair notice from Eleventh Circuit and U.S. Supreme Court precedent that it was a violation of the First Amendment to the U.S. Constitution for

a government employer to terminate or otherwise engage in adverse action against an employee because of who that employee chose to marry. Because of this, and because Plaintiff pled ample facts to state her claim, Hambrick is not entitled to qualified immunity, and Defendants' motion to dismiss should be denied.

### C. Plaintiff stated a First Amendment Retaliation claim against the County

The County's argument to dismiss Plaintiff's § 1983 claim against the County rests entirely on its argument that Plaintiff did not state a First Amendment Retaliation claim against Hambrick. As discussed in sections II(A)-(B), Plaintiff sufficiently pled that Hambrick acted with an unconstitutional motivation to terminate and otherwise retaliate against Ms. Bivins because she was married to her husband. Because Plaintiff sufficiently pled that a majority of the commissioners acted and voted with an unconstitutional motive to retaliate against Ms. Bivins, Plaintiff sufficiently stated a § 1983 claim against the County. *See Mason v. Village of El Portal,* 240 F.3d 1337, 1340 (11th Cir. 2001) ("[T]here can be no municipal liability unless all three members of the council who voted against reappointing [p]laintiff shared the illegal motive."); *Matthews v. Columbia Cnty.,* 294 F.3d 1294, 1298 (11th Cir. 2002) (stating and applying the same rule).

Notably, Defendants never bother to address the County's additional retaliation pled by Plaintiff, including all three Defendant commissioners voting to go after Ms. Bivins for $37,402 in voluntary payments it made on her behalf for

college tuition, or its efforts to deny her unemployment benefits by incredulously claiming to the Georgia Department of Labor that Ms Bivins was a "contractor" instead of an employee. Plaintiff pled that each of these are independent acts that the County, through the three Defendant commissioners, took to retaliate against Ms. Bivins because of her protected, intimate association, all in violation of § 1983. (Doc. 1 at ¶¶ 58-86.)

### D. Plaintiff stated a claim against Clayton County for breach of contract

The County's argument to dismiss Plaintiff's breach of contract claim requires a fact-based conclusion that is fundamentally premature at this stage of litigation. The County argues that Plaintiff's contract was ultra vires and void based on the Georgia Supreme Court's interpretation of O.C.G.A. § 36-3-30, specifically the prohibition on contracts that unreasonably bind future boards of commissioners, and that therefore no breach of contract claim can be made. The County primarily relies on *City of McDonough v. Campbell*, 289 Ga. 216, 710 S.E.2d 537 (2011), an opinion where the Georgia Supreme Court, considering a j.n.o.v. appeal, found that a contract between the City of McDonough and one of its employees (Campbell) was ultra vires, void, and unenforceable because it unreasonably bound the city to renew Campbell's contract every year, indefinitely, or else pay Campbell 12 months of severance and benefits. It is understandable that the County would latch onto this

opinion and hope that this Court will look beyond the glaring material distinctions between it and Ms. Bivins' case, but those distinctions compel a different outcome.

*Campbell* does not dictate that Plaintiff's breach of contract claim be dismissed, and there is no bright line rule that contracts entered into by a governing body may not be enforced beyond the term of office of the members of that governing body. To the contrary, in *Campbell*, the court acknowledged its precedent that "'[t]he weight of authority sustains the doctrine that a municipal corporation may make a valid contract to continue for a reasonable time beyond the official term of the officers entering into the contract[.]'" *Campbell*, 289 Ga. at 219, 710 S.E.2d at 539 (quoting *Jonesboro Area Athletic Assn. v. Dickson,* 227 Ga. 513, 518, 181 S.E.2d 852 (1971) (itself quoting *Horkan v. City of Moultrie*, 136 Ga. 561, 71 S.E. 785, 785 (1911) (citing 3 Abbott's Municipal Corporations, § 904))). Critically, the *Campbell* court emphasized that "what is considered to be a reasonable length of time differs upon the circumstances of each case." *Campbell*, 289 Ga. at 219, 710 S.E.2d at 539.

In *Horkan*, the contract at issue would have required the city to furnish water "indefinitely" to a citizen in exchange for the citizen permitting the city to lay a sewer through his land. *Horkan*, 71 S.E. at 785. The *Horkan* court found that contract unreasonable because it would "forever deprive" succeeding councils of the right to

exercise a governmental power. *Id*. The *Horkan* opinion was also relied on in *Aven v. Steiner Cancer Hosp.,* 189 Ga. 126, 144, 5 S.E.2d 356, 366 (1939), in which the court found a contract term of 35 years was unreasonable.

In *Campbell*, the court focused on the reasonableness of the contract as determined by considering two factors: (1) the length of time the contract continues beyond the term of the elected officials entering into the contract, and (2) whether the contract places a substantial financial burden on the part of the government. Under that framework, the court found that "[*b]ecause [Campbell's] contract is renewed automatically and the severance package requires the city to pay Campbell his salary and benefits for an entire year after the year in which the contract is terminated*, we hold that the contract is ultra vires and void." *Id*. (emphasis added).

With respect to length, in *Campbell*, the plaintiff's employment contract automatically renewed each year *indefinitely*, thereby forever binding the city to pay the plaintiff severance for a full year upon his termination (unless he was terminated for cause). *City of McDonough v. Campbell*, 304 Ga. App. 428, 430, 696 S.E.2d 150, 152 (2010), rev'd, 289 Ga. 216, 710 S.E.2d 537 (2011) (listing the termination provisions of the contract). In other words, the city would always be subject to a "buy-out" provision so long as Campbell was alive, chose to work for the city, and fulfilled his duties—an obligation which could continue for decades. The court

found this indefinite length of time to be unreasonable under the circumstances, as the city had no power to terminate the contract without paying 12 months of severance. (Notably, the contract also limited when the City Council could terminate Campbell, requiring the termination be voted on by October 30 of a given year. *Id.*)

Here, unlike Campbell, Plaintiff's contract only permitted her initial term of three years to automatically renew *once*, not *for life*. In other words, after six years, at the end of the first *and only* renewal term, the contract and Plaintiff's employment as CFO would terminate, and the County would not be obligated to pay any severance to Plaintiff. Far from handcuffing the County to an indefinite financial obligation, Plaintiff's contract was strictly confined to six years, after which the County would be released from any severance obligation. Plaintiff submits that discovery is expected to demonstrate that the County carefully considered the job security afforded to the person holding the role of Chief Financial Officer when it entered into its contract with Ms. Bivins, who had already held the position as CFO for several years when the contract was executed.

With respect to the existence of a substantial financial burden, in *Campbell*, the city was obligated to pay Campbell his salary and benefits for 12 months after the year in which he was terminated. Notably, because the contract had unlimited annual terms, this burden was a financial certainty for the city (until Campbell's

death, resignation, or termination for cause). Here, Plaintiff's contract only obligated the County to pay her six months of salary and no benefits, and that financial burden would cease to exist once Plaintiff's six-year term was complete. The dollar sum of the County's financial obligation to Plaintiff is approximately $85,000 in severance (if terminated before her six year-term expired), and the dollar sum of the City of McDonough's obligation to Campbell was $55,000 (plus 12 months of benefits, an unknown sum). However, even if the dollar sum of the County's obligation is higher than the City of McDonough's in *Campbell*, the *Campbell* court emphasized what is considered reasonable "differs upon the circumstances of each case." *Campbell*, 289 Ga. at 219, 710 S.E.2d at 539. Under the *Campbell* court's guidance, Plaintiff expects discovery in this case to demonstrate that the circumstances that constitute a "substantial financial burden" materially differ between the City of McDonough and Clayton County, as the financial circumstances of these two governments are substantially different. Without the benefit of discovery, Plaintiff submits that in FY 2010, the general fund of the City of McDonough's operating budget was $10,464,891,[5] while in FY 2023 (starting July 1, 2022)—when the vast majority of Ms. Bivins' six months of severance payments would have been paid—the general

---

[5] City of McDonough, Georgia. *2010-2011 Adopted Budget. General Fund*, pp. 1-2. https://www.mcdonoughga.org/home/showpublisheddocument/692/635368895568 700000.  Retrieved January 6, 2023.

fund of Clayton County's operating budget was $259,737,451.[6] Accordingly, Campbell's $55,000 severance payment would account for more than 0.526% of McDonough's general fund (not accounting for the value of Campbell's benefits), while Plaintiff's $85,000 severance payment would account for only 0.033% of Clayton's general fund. This is to say, deciding as a matter of law what a "substantial financial burden" is for Clayton County at a given time without the benefit of any discovery unbearably limits this Court's ability to make that determination at this stage.

For these reasons, this Court should reject the County's arguments to dismiss Plaintiff's breach of contract count for failure to state a claim.

### E. Plaintiff sufficiently pled claims for punitive damages and attorney fees

Defendants argue that Plaintiff's punitive damages and attorneys' fees claims are subject to dismissal "should the underlying claims against the Defendants be dismissed." (Doc. 22-1, p. 19.) Because all of Defendants' arguments in their motion to dismiss are premature and unsupported by fact or law, Plaintiff's claims for punitive damages and attorneys' fees should not be dismissed. Defendants

---

[6] Clayton County, Georgia. *Fiscal Year 2023 Annual Operating Budget.* p. 16. https://www.claytoncountyga.gov/download/34/annual-budget/38263/fy2023-budget-book.pdf. Retrieved January 6, 2023.

alternatively argue that Plaintiff did not plead sufficient facts to support punitive damages under § 1983 or attorney fees under state law, but she did.

Defendants' argument against attorneys' fees and costs is premature, and Plaintiff sufficiently pled multiple avenues by which Plaintiff may ultimately be entitled to attorneys' fees and costs at trial, including, at a minimum, Plaintiff's allegations of bad faith and unnecessary trouble and expense. Under Georgia law,"[f]or the plaintiff to recover [attorneys' fees and costs she] need only show any one of the three conditions to exist[;]" either, "that the defendant has acted in bad faith in making the contract, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." *Jackson v. Brinegar, Inc.,* 165 Ga. App. 432, 436 (1983). "While a refusal to pay a debt, without more, will not support an award of attorney fees under OCGA § 13–6–11, "it may be sufficient when it is not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive. There may be bad faith in carrying out the provisions of the contract sufficient to support the award." *Roofers Edge, Inc. v. Standard Bldg. Co.,* 295 Ga. App. 294, 295–96, 671 S.E.2d 310, 311 (2008) (citing *Bryan v. Brown Childs Realty Co.*, 252 Ga.App. 502, 508(3), 556 S.E.2d 554 (2001).

Furthermore, the "bona fide controversy" exception to granting attorneys' fees and costs does not apply when the plaintiff presents evidence of bad faith. "A

plaintiff may recover [attorneys' fees and costs under OCGA § 13–6–11] for bad faith concerning the transactions and dealings out of which the cause of action arose. A bona fide controversy within the contemplation of the code section pertains solely to the issue of stubborn litigiousness or causing the plaintiff unnecessary trouble and expense." *Bryan v. Brown Childs Realty Co*., 252 Ga. App. 502, 507, 556 S.E.2d 554, 560 (2001) (citing *Stargate Software Intl. v. Rumph,* 224 Ga.App. 873, 878(4), 482 S.E.2d 498 (1997)). That is, "[d]espite the existence of a bona fide controversy as to liability, a jury may find that defendant acted in the most atrocious bad faith in his dealing with the plaintiff." *Id*. Finally, Defendants fail to recognize that "[e]ven slight evidence of bad faith can be enough to create an issue for the jury." *Morrison Homes of Fla., Inc. v. Wade*, 266 Ga. App. 598, 600, 598 S.E.2d 358, 361 (2004).

Here, Plaintiff pled both that Defendants acted in bad faith and that Defendants caused Plaintiff unnecessary trouble and expense. For example, Plaintiff pled that "Defendant Clayton County's declaration of Plaintiff's Agreement as *ultra vires* was made in bad faith and was a transparent attempt to avoid paying Plaintiff the severance that she was due." (Doc. 1 at ¶ 110.) Furthermore, Plaintiff also alleged that:

> [t]he conduct of Clayton County in refusing to pay Plaintiff severance she is entitled to under the terms of her contract as well as its aggressive pursuit of tuition reimbursement is in bad faith, is stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense[.]

(*Id.* at ¶ 113.) Moreover, broadly, Plaintiff's breach of contract claim is centered on the unconstitutional motivations of the County's decisionmakers, specifically that they breached Plaintiff's contract because she was married to a man who campaigned against their and Victor Hill's preferred political candidate—cruel motivations that are strong characterizations of bad faith. Plaintiff thusly pled that Defendants acted in bad faith. No more is needed for Plaintiff to preserve her right to seek attorneys' fees and costs at trial, irrespective of whether this Court ultimately determines that there was a bona fide controversy *at the summary judgment stage*.

With respect to punitive damages, Defendants make an ineffectual argument that Plaintiff did not plead factual allegations of malice or reckless indifference, and then cite two opinions from j.n.o.v. appeals to suggest that Plaintiff was obligated to meet evidentiary standards in her Rule 8 Complaint—which she was not. Plaintiff pled that "Defendants Franklin, Anderson, and Hambrick acted in reckless disregard for Plaintiff's constitutional rights" and that their "retaliatory actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to the consequences." (Doc. 1 at ¶¶ 117, 119.) To support these allegations, Plaintiff's Complaint pled a portfolio of facts demonstrating the Defendant commissioners' malice or reckless indifference. For example, Plaintiff pled facts showing: (1) Franklin and Anderson

congratulating each other for their retaliatory termination of Ms. Bivins, (*id*. at ¶ 48); (2) all three Defendant commissioners' refusal to provide their fellow commissioners or the public with any basis for terminating Ms. Bivins in the face of glowing performance reviews and a public demanding answers, (*id*. at ¶¶ 46-47, 49-50); (3) all three Defendant commissioners' vote to strip Chairman Turner of responsibilities as Chairman as retribution for speaking out against the termination of Ms. Bivins, (*id*. at ¶ 59); (4) all three Defendant commissioners' refusal to declare COO Stanford's multi-year contract ultra vires, thus demonstrating the fraudulent basis for so-declaring Plaintiff's contract, (*id*. at ¶¶ 66-70); and (5) all three Defendant commissioners' votes and actions demanding Plaintiff's tuition payments be investigated and repaid—but that they were "only going after Ramona[,]" (*id*. at ¶¶ 74-84). These Defendants' actions displayed not only reckless disregard and malice, but also cruelty, and Plaintiff is permitted to seek punitive damages at trial.

## III.   CONCLUSION

For all the aforementioned reasons, Defendants' arguments in support of their motion to dismiss are premature or without firm legal or factual bases. Defendants' motion should be denied in its entirety, and the stay of discovery should be lifted so that this case may proceed.

Respectfully submitted this 9th day of January, 2023.

BUCKLEY BEAL LLP

By:    */s/ Andrew R. Tate*
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@buckleybeal.com
Andrew R. Tate
Georgia Bar No. 518068
atate@buckleybeal.com

600 Peachtree Street NE
Suite 3900
Atlanta, GA  30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101
*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| RAMONA THURMAN BIVINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: |
| vs. | ) | 1:22-cv-04149-WMR |
| | ) | |
| FELICIA FRANKLIN, in her individual | ) | **JURY TRIAL DEMANDED** |
| and official capacities; | ) | |
| ALIEKA ANDERSON, in her individual | ) | |
| and official capacities; | ) | |
| GAIL HAMBRICK, in her individual | ) | |
| and official capacities; and | ) | |
| CLAYTON COUNTY, GEORGIA, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 9, 2023, I electronically filed the above

**RESPONSE IN OPPOSITION TO DEFENDANTS CLAYTON COUNTY'S**

**AND GAIL HAMBRICK'S MOTION TO DISMISS** with the Clerk of Court

using the CM/ECF system, which will automatically send email notification of such

filing to the following attorneys of record:

> A. Ali Sabzevari - asabzevari@fmglaw.com
> Kirsten S. Daughdril - kirsten.daughdril@fmglaw.com
> John D. Bennett - jbennett@fmglaw.com
> Jack R. Hancock - jhancock@fmglaw.com

Ken E. Jarrard - kjarrard@jarrard-davis.com
Melissa A. Tracy - mtracy@jarrard-davis.com
Randall C. Farmer - rfarmer@gdcrlaw.com
Dasha M. Jackson - djackson@gdcrlaw.com

**BUCKLEY BEAL LLP**

By:     */s/ Andrew R. Tate*
        Andrew R. Tate
        Georgia Bar No. 518068