UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RAMONA THURMAN BIVINS, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | CIVIL ACTION NO.: |
| vs. ) | 1:22-cv-04149-WMR |
| ) | |
| FELICIA FRANKLIN, in her individual ) | JURY TRIAL DEMANDED |
| and official capacities; ) | |
| ALIEKA ANDERSON, in her individual ) | |
| and official capacities; ) | |
| GAIL HAMBRICK, in her individual ) | |
| and official capacities; and ) | |
| CLAYTON COUNTY, GEORGIA, ) | |
| ) | |
|    Defendants. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT ALIEKA ANDERSON'S MOTION FOR JUDGMENT ON THE PLEADINGS**

COMES NOW, Plaintiff Ramona Bivins ("Ms. Bivins"), and files her response in opposition to the Motion for Judgment on the Pleadings filed by Defendant Alieka Anderson (Doc. 29), showing the Court as follows:

**I.  INTRODUCTION**

Defendant Anderson's motion for judgment on the pleadings parrots Defendant Hambrick's motion to dismiss (Doc. 22) by making the same flawed legal arguments. Contrary to those arguments, Plaintiff's Complaint stated a compelling, plausible claim against Anderson for First Amendment Retaliation in violation of

1

Plaintiff's right to intimate association with her husband, Charlton Bivins, and Anderson had fair notice that her conduct violated clearly established law, thereby precluding her from receiving qualified immunity.

## II.   ARGUMENT AND CITATION OF AUTHORITY

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is adjudicated under the same legal standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). When confronted with a motion to dismiss, Plaintiff carries the burden of demonstrating that her facts amount to a plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). This is accomplished by pleading "enough facts to raise a reasonable expectation that discovery will reveal evidence…" to support the claim at issue. *Id*. In other words, a plaintiff must plead enough facts to plausibly suggest that the claim is viable. *Id*. at 557. In *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) the Supreme Court reenforced the 'plausibly suggests' standard: A complaint must only "plausibly suggest an entitlement to relief." *Id*. at 681. Moreover, to plausibly suggest that a particular claim is viable does not require a surplus of well-pled facts; Fed. R. Civ. P. 8(a)(2) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief…." Indeed, Fed. R. Civ. P. 8(a)(2) has created a fair-notice standard for complaints and thus only necessitates "short and plain statements" that "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. This is to say that Fed.

R. Civ. P. 8(a)(2) does not require an "exposition of [Plaintiff's] legal argument" and "need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer,* 562 U.S. 521, 530 (2011).

A complaint challenged under Rules 12 (c) or 12(b)(6) does not have to plead detailed factual allegations, and there is no requirement of "heightened fact pleadings of specifics." *Twombly*, 550 U.S. at 555, 570. In addition, there exists an assumption that all factual allegations in the Complaint are true, and all reasonable inferences derived from those facts must be drawn in Plaintiff's favor. *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). In sum, the plausibility standard requires only that Plaintiff "nudge [her] claims across the line from conceivable to plausible," pleading enough facts to support the claim at issue. *Twombly*, 550 U.S. at 556.

**A. Plaintiff stated a First Amendment Retaliation claim against Anderson**

The First Amendment protects the right of intimate association, which is "the freedom to choose to enter into and maintain certain intimate human relationships," and it is protected from undue government intrusion "as a fundamental aspect of personal liberty." *Gaines v. Wardynski*, 871 F.3d 1203, 1212 (11th Cir. 2017) (citing *McCabe v. Sharrett*, 12 F.3d 1558, 1562–63 (11th Cir. 1994)). The U.S. Supreme Court and the Eleventh Circuit have long recognized that "[a]t a minimum,

the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *McCabe,* 12 F.3d at 1563 (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 619, 104 S.Ct. 3244, 3250, 82 L.Ed.2d 462 (1984)). Accordingly, a public employee cannot be subjected to an adverse employment action for exercising her First Amendment right to intimate association. *Gaines*, 871 F.3d at 1213. *See also Cummings v. DeKalb Cnty.*, 24 F.3d 1349, 1354 (11th Cir. 1994); *Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) finding that a person's involvement in activity shielded by the constitutionally protected rights of privacy and liberty constitutes an impermissible reason for denying employment); *Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999) (recognizing strong claim for First Amendment retaliation where plaintiff alleged his state employer sought "to penalize him with loss of his job because of its displeasure with the conduct of his wife," where the wife had sued the state); *Adkins v. Bd. of Educ. of Magoffin Cnty., Ky.,* 982 F.2d 952, 956 (6th Cir. 1993) (noting that "it is not necessary that the governmental act require the abandonment or dissolution of a

marriage relationship as the price for retaining public employment." (citing *Roberts*, 468 U.S. at 618–19, 104 S.Ct. at 3249–50.)).

To state a claim for violation of the First Amendment right to intimate association, Ms. Bivins was required to plead facts that show that "the asserted right is protected by the Constitution—which... the right to freedom of intimate association is—and that [ ] she suffered adverse action for exercising that right." *See Teblum v. City of Cape Coral Charter Sch. Auth.,* No. 2:20-CV-547-JLB-MRM, 2021 WL 1172910, at *6 (M.D. Fla. Mar. 29, 2021) (quoting *Gaines*, 871 F.3d at 1212–13); *Miron v. Town of Stratford*, 881 F. Supp. 2d 280, 289-291 (D. Conn. 2012).

Plaintiff pled, *inter alia*, the following compelling facts regarding Anderson and her motivation to retaliate against Ms. Bivins due to her marriage to Charlton Bivins:

- "At all times relevant to this Complaint, Clayton County Commissioners Felicia Franklin, Alieka Anderson and Gail Hambrick knew that Ms. Bivins was married to Mr. [Charlton] Bivins." (Doc. 1 at ¶¶ 21-22.)

- "Throughout March, April, and May 2022, Mr. Bivins openly campaigned for the reelection of incumbent Clayton County Commissioner DeMont Davis, who was running against a candidate named Janice Scott ("Ms. Scott")." (*Id*. at ¶ 23.)[1]

- "Throughout March, April, and May 2022, Clayton County Commissioners Franklin and Anderson, as well as [former] Clayton County Sheriff Victor Hill, openly campaigned in support of Ms. Scott and against her opponent, Commissioner Davis." (*Id*. at ¶ 25.)

- On May 22, 2022, Mr. Bivins assisted Commissioner Davis and local police regarding a suspected theft of Davis campaign signs by Scott campaign workers, and the public record of this assistance was well known after (1) Victor Hill, with the assistance of Defendant Franklin, published on May 24, 2022, the police dispatch call in which Mr. Bivins was described by name, and (2) after the Clayton Crescent published an article on May 23, 2022, that specifically mentioned Mr. Bivins' support of and assistance to Mr. Davis / Mr. Bivins' opposition to Ms. Scott, as well as his marriage to Ms. Bivins. (*Id*. at ¶¶ 26-34.)

---

[1] In her motion, Anderson mistakenly states that "Plaintiff alleges that the Defendants retaliated against her *because her husband was campaigning for a candidate who was running against Commissioner Davis*." (Doc. 29, p. 4.) To the contrary, Mr. Bivins was campaigning for Commissioner Davis, while Anderson, Franklin, and former Sheriff Victor Hill were campaigning for the candidate who was running against Commissioner Davis, Janice Scott. (Doc. 1 at ¶¶ 22-25, 52.)

- At its monthly meeting on June 7, 2022—two weeks after the campaign sign incident—the Board of Commissioners, in a 3-2 vote led by Defendants Hambrick, Franklin, and Anderson, voted to terminate Ms. Bivins' contract with Clayton County ("the County"), terminate her employment, require her to remove her belongings within 48 hours, and declare her contract ultra vires. (*Id*. at ¶¶ 37-41.)

- "Declaring Ms. Bivins' Agreement *ultra vires* was Franklin's, Anderson's, and Hambrick's attempt to create a legal basis for the County to refuse to pay Ms. Bivins $84,853.86 in severance payments pursuant to Ms. Bivins' Agreement." (*Id*. at ¶ 42.)

- "There was no legal justification provided for declaring Ms. Bivins' Agreement *ultra vires* at the June 7 Board meeting." (*Id*. at ¶ 43.)

- "When Commissioner Davis, who voted against termination, asked why Ms. Bivins [the County's CFO for nearly 10 years] was being fired, the Board members who favored her dismissal —Franklin, Anderson, and Hambrick — did not respond." (*Id*. at ¶ 44.)

- "[Chairman Jeffrey] Turner asked the Board to reconsider [its] vote. He then questioned where Bivins 'had fallen down on the job,' asking if there was a record of it. Neither Anderson, Franklin, nor Hambrick commented or answered the question. Turner—who authored Ms. Bivins' performance evaluations—said that there is no such record, stating her evaluations have been outstanding the last several years." (*Id*. at ¶ 46.)

7

- "A few minutes after the meeting, Commissioners Franklin and Anderson expressed glee at Ms. Bivins' termination and purportedly voided [the] Agreement. Franklin said to Anderson, 'I can sleep good tonight.' In response, Anderson said, 'Do I need to get us a bottle?'" (*Id*. at ¶ 48.)

- "Neither the County, Franklin, Anderson, nor Hambrick have publicly stated why Bivins was terminated." (*Id*. at ¶ 49.)

- "In contrast with their cold determination to dismiss Ms. Bivins without providing any explanation, Anderson, Franklin, and Hambrick demonstrated support for Ms. Bivins' job performance up until they publicly observed that Ms. Bivins' husband was affiliated with Davis's reelection campaign and/or that Ms. Bivins' husband was 'interfering' with Janice Scott's campaign activities and the suspected theft by her campaign workers. For example, Commissioner Anderson praised Ms. Bivins' work on the annual budget approximately two weeks before the sign incident occurred." (*Id*. at ¶ 50.)

- "Following the campaign sign incident, Anderson, Franklin, and Hambrick demonstrated a singular focus to use their power of elective office under color of state law to diminish the lives of Mr. and Ms. Bivins." (*Id*. at ¶ 51.)

- "The County, through Anderson, Franklin, and Hambrick, was motivated to terminate Ms. Bivins because she is married to Mr. Bivins and because Mr. Bivins and Ms. Bivins supported Commissioner Davis's election campaign." (*Id*. at ¶ 52.)

- "Following Chairman Turner's vocal opposition to the retaliatory termination of Ms. Bivins, on June 21, 2022, Clayton County, led by Commissioners Anderson, Franklin, and Hambrick, voted to strip Chairman Turner of significant responsibilities as Chairman of the Board as retribution for speaking out against the politically motivated termination [of] Ms. Bivins." (*Id*. at ¶ 59.)

- "The County, through Anderson, Franklin, and Hambrick, sought, and continues to seek, reimbursement for Ms. Bivins' tuition payments despite knowing that Ms. Bivins' Agreement permitted the County to pay Ms. Bivins' tuition for the Vanderbilt courses and despite knowing that Anderson's investigation into the matter revealed that the payments were not unauthorized." (*Id*. at ¶ 74.)

- "After Anderson asked Mr. Stanford to help her investigate Ms. Bivins' tuition payments, Mr. Stanford offered to pay the County back for his tuition payments. When Ms. Anderson heard about this, she told Mr. Stanford, **'You don't have to do that. We're only going after Ramona.'**" (*Id*. at ¶ 76.)

- It is a reasonable inference that "We," as used by Anderson in ¶ 76, referred to *Anderson, Franklin, and Hambrick*, as they were the commissioners that voted 3-2 to go after Ms. Bivins, and not go after Mr. Stanford, for tuition payments. (*Id*. at ¶ 77.)

In her threadbare motion, Anderson baselessly labels as "conclusory" Plaintiff's well-pled facts regarding Anderson's retaliatory animus, but Plaintiff's Complaint contained ample facts that allege Anderson maintained an unconstitutional motive and was personally involved in the decisions to terminate and otherwise retaliate against Ms. Bivins because she was married to Charlton Bivins, thereby stating a §1983 claim against Anderson for First Amendment Retaliation. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (personal involvement in the constitutional tort is sufficient to allege causation under § 1983); *Gaines*, 871 F.3d at 1212–13. Furthermore, because Plaintiff sufficiently pled that a

9

majority of the commissioners (Anderson, Franklin, and Hambrick) acted and voted with an unconstitutional motive to retaliate against Ms. Bivins, Plaintiff sufficiently stated a § 1983 claim against the County. *See Mason v. Village of El Portal,* 240 F.3d 1337, 1340 (11th Cir. 2001) ("[T]here can be no municipal liability unless all three members of the council who voted against reappointing [p]laintiff shared the illegal motive."); *Matthews v. Columbia Cnty.,* 294 F.3d 1294, 1298 (11th Cir. 2002) (stating and applying the same rule); (Doc 1 at ¶¶ 21-34, 37-52, 59, 74, 76, *inter alia*).[2] Because Plaintiff met her burden under Rule 8, Anderson's motion should be denied.

### B. Anderson is not entitled to Qualified Immunity

Similar to Hambrick's motion to dismiss, (Doc. 22), Anderson's motion spends considerable time reciting the qualified immunity standard, then concludes, ignoring the law and Plaintiff's well-pled factual allegations, that "there is no case from the U.S. Supreme Court of the 11th Circuit Court of Appeals that would inform Anderson that voting to non-renew Plaintiff's contract because it was *ultra vires* would somehow violate Plaintiff's associational First Amendment rights." (Doc. 29

---

[2] Anderson's motion makes mention of Anderson's policymaking authority with respect to the standard for holding the County liable under 42 U.S.C. § 1983 ("§ 1983"), but Anderson's counsel neither represents nor moves on behalf of the County. The County separately moved to dismiss Plaintiff's § 1983 claim, and Plaintiff filed a thorough response to that motion. (Docs. 22, 22-1, 33.)

at pp. 11-12.) This argument is fatally flawed, as it incorrectly defines the constitutional right at issue and asks this Court to make extreme inferences in Anderson's favor with respect to her motives for terminating Plaintiff without the benefit of discovery and in defiance of the standard for a motion for judgment on the pleadings. It also ignores all of Anderson's acts of retaliation following Plaintiff's termination, including her actions to get Plaintiff to reimburse the County $37,000 for tuition payments that it voluntarily made on her behalf.

In ruling on qualified immunity, a court must first determine whether the complaint, taken in the light most favorable to the plaintiff, alleges facts which, if proven, would show that the public official violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If no constitutional right could have been violated, then there is no need to proceed to the second step. *Id.* Thus, as other courts have noted, a determination on a motion for failure to state a claim and the first step of the qualified immunity analysis merge when presented in a Rule 12(b)(6) motion. *GJR Investments, Inc. v. County of Escambia, Florida,* 132 F.3d 1359, 1366 (11th Cir.1998). If a court finds that a constitutional right was violated, then the court must determine whether that right was clearly established in light of the specific context of the case. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151.

Here, Plaintiff pled that she had the right to be married to her husband due to the First Amendment's protections for intimate association, and that Hambrick's, Anderson's, and Franklin's acts of terminating her from her government job and otherwise retaliating against her, all because of her marriage, violated that right. (Doc. 1 at ¶¶ 87-107.) In performing the qualified immunity analysis, the Eleventh Circuit has stated as follows:

> The question in this case is not whether there is a First Amendment right to intimate association; there is. Nor is the question whether a public employee can be subjected to an adverse employment action for exercising that right; she can't. Nor is the question whether the employee will prevail if the adverse action infringed on her right to intimate association; she will.

*Gaines*, 871 F.3d at 1213.[3] The instant case rests on firm precedent from the U.S. Supreme Court and the Eleventh Circuit that engaging in adverse employment action against an employee because of their intimate relationship, such as marriage, violates the employee's right to intimate association. *See, e.g., Id.*; *Roberts*, 468 U.S. at 617–18, 622; *McCabe,* 12 F.3d at 1563; *Cumming,* 24 F.3d at 1354; *Rotary Club of Duarte*, 481 U.S. 537; *Perry,* 408 U.S. 593.

---

[3] The *Gaines* court went on to define the constitutional right in that case more specifically and found that it was not clearly established that it will violate the First Amendment's freedom of association right when a public employer fails to promote an employee because the employee's *father* engaged in protected speech. *Id*.

As stated in section II(A), *supra*, Plaintiff sufficiently pled that Anderson violated the First Amendment when she voted to terminate Ms. Bivins and otherwise retaliate against her because Ms. Bivins was married to Charlton Bivins. (Doc 1 at ¶¶ 21-34, 37-52, 59, 74, 76, *inter alia*.) In her Complaint, Plaintiff also cited binding U.S. Supreme Court and Eleventh Circuit caselaw to demonstrate that Defendants' First Amendment violations were clearly established. (Doc. 1 at n. 1-2 (citing *Roberts*, 468 U.S. 609; *Rotary Club of Duarte*, 481 U.S. 537; *McCabe,* 12 F.3d at 1562-63).) Anderson completely ignores this caselaw in her brief. Indeed, it was clearly established in June 2022 that terminating or otherwise engaging in adverse action against a government employee because of who that employee chose to marry (let alone that her husband was engaged in political speech) violated the First Amendment's right to freedom of association, and Anderson is not entitled to qualified immunity. *See Id.*

Anderson's argument is that it was not clearly established that "voting to non-renew Plaintiff's contract <u>because it was *ultra vires*</u> would somehow violate Plaintiff's associational First Amendment rights." (Doc. 29 at pp. 11-12 (underlined emphasis added).) Anderson's phrasing, "because it was *ultra vires*," creates an implicit request for this Court to grant her the extraordinary inference that she believed at the time that Plaintiff's contract was in fact ultra vires—and also that she

13

had no other, unconstitutional motivation for voting to both non-renew Plaintiff's contract and terminate her effective immediately. Fundamentally, granting a defendant *any* inferences in a Rule 12(b)(6) or Rule 12(c) motion is improper. Furthermore, Anderson's state of mind during her numerous acts of retaliation is a subject of significant, forthcoming discovery, and the fact that Anderson's threadbare legal argument relies so heavily on her state of mind demonstrates why her argument is premature.

In addition, the improper inference that Anderson seeks is belied by Plaintiff's well-pled facts. For example, in the Complaint, Plaintiff pled that COO Dietrick Stanford *also* had a contract that was initiated by a formerly comprised Board of Commissioners, and *that Mr. Stanford's contract has never been declared ultra vires*. (Doc. 1 at ¶¶ 66-70.) In addition, the Defendant commissioners did not even vote to declare Plaintiff's contract ultra vires until *after* seeking to prematurely hold a vote to terminate her and voting against renewing her contract. (*Id*. at ¶¶ 39-41.) All three Defendant commissioners then refused to answer their fellow commissioners or the public to explain why Ms. Bivins was being thrown to the street after 10 years of loyal service and high performance. (*Id*. at ¶¶ 46-47, 49-50.) These commissioners' bellowing collective silence begs the question: if Anderson (or any of these commissioners) had a sound legal basis for voiding Plaintiff's

contract that Anderson suddenly felt compelled to act on without any warning, why would she remain silent when asked for her rationale by fellow commissioners or the public? Furthermore, even if, *arguendo*, Anderson earnestly believed that Plaintiff's contract was ultra vires—a question of fact that Plaintiff should be permitted to explore in discovery—that does not answer the question of why she moved and voted to also *terminate* Plaintiff's employment. It cannot be ignored that Plaintiff worked for several years as the County's CFO without any contract at all. (*Id*. at ¶ 72.)

Anderson was on fair notice from Eleventh Circuit and U.S. Supreme Court precedent that it was a violation of the First Amendment to the U.S. Constitution for a government employer to terminate or otherwise engage in adverse action against an employee because of who that employee chose to marry. Because of this, and because Plaintiff pled ample facts to state her claim, Anderson is not entitled to qualified immunity, and Anderson's motion for judgment on the pleadings should be denied.

### III. CONCLUSION

For all the aforementioned reasons, Anderson's arguments in support of her motion are premature or without firm legal or factual bases. Anderson's motion should be denied in its entirety.

Respectfully submitted this 12th day of January, 2023.

                                                **BUCKLEY BEAL LLP**

                      By:   */s/ Andrew R. Tate*
                              Edward D. Buckley
                              Georgia Bar No. 092750
                              edbuckley@buckleybeal.com
                              Andrew R. Tate
                              Georgia Bar No. 518068
                              atate@buckleybeal.com

600 Peachtree Street NE
Suite 3900
Atlanta, GA  30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101
*Counsel for Plaintiff*

16

## **LR 7.1(D) FONT COMPLIANCE CERTIFICATION**

The undersigned counsel certifies that the within and foregoing **RESPONSE IN OPPOSITION TO DEFENDANT ALIEKA ANDERSON'S MOTION FOR JUDGMENT ON THE PLEADINGS** was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

This 12th day of January, 2023.

                                                **BUCKLEY BEAL LLP**

                                                */s/ Andrew R. Tate*
                                                Andrew R. Tate
                                                Georgia Bar No. 518068

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| RAMONA THURMAN BIVINS,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | CIVIL ACTION NO.: |
| vs.  ) | 1:22-cv-04149-WMR |
| ) | |
| FELICIA FRANKLIN, in her individual ) | **JURY TRIAL DEMANDED** |
| and official capacities;  ) | |
| ALIEKA ANDERSON, in her individual ) | |
| and official capacities;  ) | |
| GAIL HAMBRICK, in her individual  ) | |
| and official capacities; and  ) | |
| CLAYTON COUNTY, GEORGIA,  ) | |
| ) | |
| ) | |
| Defendants.  ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2023, I electronically filed the above **RESPONSE IN OPPOSITION TO DEFENDANT ALIEKA ANDERSON'S MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

    A. Ali Sabzevari - asabzevari@fmglaw.com
    Kirsten S. Daughdril - kirsten.daughdril@fmglaw.com
    John D. Bennett - jbennett@fmglaw.com
    Jack R. Hancock - jhancock@fmglaw.com

Ken E. Jarrard - kjarrard@jarrard-davis.com
Melissa A. Tracy - mtracy@jarrard-davis.com
Randall C. Farmer - rfarmer@gdcrlaw.com
Dasha M. Jackson - djackson@gdcrlaw.com

                             **BUCKLEY BEAL LLP**

By:   */s/ Andrew R. Tate*
        Andrew R. Tate
        Georgia Bar No. 518068