**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RAMONA THURMAN BIVINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO.: |
| vs. | ) 1:22-cv-04149-WMR |
| | ) |
| FELICIA FRANKLIN, in her individual | ) **JURY TRIAL DEMANDED** |
| and official capacities; | ) |
| ALIEKA ANDERSON, in her individual | ) |
| and official capacities; | ) |
| GAIL HAMBRICK, in her individual | ) |
| and official capacities; and | ) |
| CLAYTON COUNTY, GEORGIA, | ) |
| | ) |
| Defendants. | ) |

<u>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT FELICIA FRANKLIN'S MOTION FOR JUDGMENT ON THE PLEADINGS**</u>

COMES NOW, Plaintiff Ramona Bivins ("Ms. Bivins"), and files her response in opposition to the Motion for Judgment on the Pleadings filed by Defendant Felicia Franklin ("Franklin") (Doc. 44), showing the Court as follows:

## I.    INTRODUCTION

Defendants Hambrick, Anderson, and Franklin have inexplicably staggered their dispositive motions such that they have perpetually delayed this case for five months and counting, each coming up with new legal theories for why Plaintiff's contract was "obviously" invalid in those commissioners' minds at the time they

1

terminated Plaintiff. Defendant Franklin's motion for judgment on the pleadings largely mimics Defendant Gail Hambrick's ("Hambrick") motion to dismiss (Doc. 22) and Defendant Alieka Anderson's ("Anderson") motion for judgment on the pleadings (Doc. 29), both of which are currently pending before this court, by making similarly flawed legal arguments. Contrary to those tired arguments, Plaintiff's Complaint stated a compelling, plausible claim against Franklin for First Amendment Retaliation in violation of Plaintiff's right to intimate association with her husband, Charlton Bivins, and Franklin had fair notice that her conduct violated clearly established law, thereby precluding her from receiving qualified immunity.

Franklin's argument that Plaintiff could not have suffered adverse employment action because her job never legally existed is both an absurd, *ex post facto* ideation and a strawman. *Behold*, Franklin's argument proclaims, *Ramona Bivins' nine-year employment never even existed!* Even if the Court accepted this ludicrous argument at face value—which it should absolutely reject—it would not change the plain fact that Plaintiff was terminated from a position she worked for nine years, and therefore suffered adverse employment action—period. Moreover, the County is estopped from asserting this argument after affirmingly benefiting from Ms. Bivins' work for nearly nine years. Each of Franklin's arguments also improperly asks this Court to enter the minds of the Defendants at the pleading stage

2

before any discovery has occurred and grant them the benefit of any doubt—to find that they voted to terminate Plaintiff for innocent, legally obscure reasons that they conspicuously refused to share with a public demanding answers. For example, Franklin chalks Plaintiff's retaliation claim up as an instance of Plaintiff engaging in "political cynicism," suggesting that trusted associates of convicted felon and former Sheriff Victor Hill could not possibly hold retaliatory or corrupt motives. Franklin's motion should be denied in its entirety, and this case should immediately proceed to the discovery stage that each Defendant has fought desperately to avoid— and that Plaintiff expects will be damning.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Standard of Review

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is adjudicated under the same legal standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). When confronted with a motion to dismiss, Plaintiff carries the burden of demonstrating that her facts amount to a plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). This is accomplished by pleading "enough facts to raise a reasonable expectation that discovery will reveal evidence…" to support the claim at issue. *Id*. In other words, a plaintiff must plead enough facts to plausibly suggest that the claim is viable.  *Id*. at 557. In *Ashcroft v. Iqbal*, 556 U.S. 662, 677

(2009) the Supreme Court reenforced the 'plausibly suggests' standard: A complaint must only "plausibly suggest an entitlement to relief." *Id*. at 681. Moreover, to plausibly suggest that a particular claim is viable does not require a surplus of well-pled facts; Fed. R. Civ. P. 8(a)(2) it only requires a "short and plain statement of the claim showing that the pleader is entitled to relief…." Indeed, Fed. R. Civ. P. 8(a)(2) has created a fair-notice standard for complaints and thus only necessitates "short and plain statements" that "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. This is to say that Fed. R. Civ. P. 8(a)(2) does not require an "exposition of [Plaintiff's] legal argument" and "need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

A complaint challenged under Rules 12 (c) or 12(b)(6) does not have to plead detailed factual allegations, and there is no requirement of "heightened fact pleadings of specifics." *Twombly*, 550 U.S. at 555, 570. In addition, there exists an assumption that all factual allegations in the Complaint are true, and all reasonable inferences derived from those facts must be drawn in Plaintiff's favor. *St. George v. Pinellas Cty*., 285 F.3d 1334, 1337 (11th Cir. 2002). In sum, the plausibility standard requires only that Plaintiff "nudge [her] claims across the line from conceivable to

plausible," pleading enough facts to support the claim at issue. *Twombly*, 550 U.S. at 556.

**B.    Plaintiff stated a First Amendment Retaliation claim against Defendant Franklin.**

The First Amendment protects the right of intimate association, which is "the freedom to choose to enter into and maintain certain intimate human relationships," and it is protected from undue government intrusion "as a fundamental aspect of personal liberty." *Gaines v. Wardynski*, 871 F.3d 1203, 1212 (11th Cir. 2017) (citing *McCabe v. Sharrett*, 12 F.3d 1558, 1562–63 (11th Cir. 1994)). The U.S. Supreme Court and the Eleventh Circuit have long recognized that "[a]t a minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *McCabe,* 12 F.3d at 1563 (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 619, 104 S.Ct. 3244, 3250, 82 L.Ed.2d 462 (1984)). Accordingly, a public employee cannot be subjected to an adverse employment action for exercising her First Amendment right to intimate association. *Gaines*, 871 F.3d at 1213. *See also Cummings v. DeKalb Cnty.,* 24 F.3d 1349, 1354 (11th Cir. 1994); *Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) finding

that a person's involvement in activity shielded by the constitutionally protected rights of privacy and liberty constitutes an impermissible reason for denying employment); *Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999) (recognizing strong claim for First Amendment retaliation where plaintiff alleged his state employer sought "to penalize him with loss of his job because of its displeasure with the conduct of his wife," where the wife had sued the state); *Adkins v. Bd. of Educ. of Magoffin Cnty., Ky.,* 982 F.2d 952, 956 (6th Cir. 1993) (noting that "it is not necessary that the governmental act require the abandonment or dissolution of a marriage relationship as the price for retaining public employment." (citing *Roberts*, 468 U.S. at 618–19, 104 S.Ct. at 3249–50.)).

To state a claim for violation of the First Amendment right to intimate association, Ms. Bivins was required to plead facts that show that "the asserted right is protected by the Constitution—which... the right to freedom of intimate association is—and that [ ] she suffered adverse action for exercising that right." *See Teblum v. City of Cape Coral Charter Sch. Auth.,* No. 2:20-CV-547-JLB-MRM, 2021 WL 1172910, at *6 (M.D. Fla. Mar. 29, 2021) (quoting *Gaines*, 871 F.3d at 1212–13); *Miron v. Town of Stratford*, 881 F. Supp. 2d 280, 289-291 (D. Conn. 2012).

Plaintiff pled, *inter alia*, the following compelling facts regarding Franklin and her motivation to retaliate against Ms. Bivins due to her marriage to Charlton Bivins:

- "At all times relevant to this Complaint, Clayton County Commissioners Felicia Franklin, Alieka Anderson and Gail Hambrick knew that Ms. Bivins was married to Mr. [Charlton] Bivins." (Doc. 1 at ¶¶ 21-22.)

- "Throughout March, April, and May 2022, Mr. Bivins openly campaigned for the reelection of incumbent Clayton County Commissioner DeMont Davis, who was running against a candidate named Janice Scott ("Ms. Scott")." (*Id*. at ¶ 23.)

- "Throughout March, April, and May 2022, Clayton County Commissioners Franklin and Anderson, as well as [convicted felon and former] Clayton County Sheriff Victor Hill, openly campaigned in support of Ms. Scott and against her opponent, Commissioner Davis." (*Id*. at ¶ 25.)

- On May 22, 2022, Mr. Bivins assisted Commissioner Davis and local police regarding a suspected theft of Davis campaign signs by Scott campaign workers. (*Id*. at ¶ 26.)

- "On May 23, 2022, Felicia Franklin personally emailed reporter Robin Kemp at the Clayton Crescent, a local newspaper, a copy of an audio recording. The recording included part of a phone call on May 22, 2022, between Commissioner Davis and Bruce Parks, Assistant Chief of the Clayton County Police Department, which mentions Charlton Bivins by name and his efforts to locate the Scott campaign vehicle for the police." (*Id*. at ¶ 28.)

7

- "Clayton County Chief of Police Kevin Roberts stated to the Clayton Crescent that Felicia Franklin personally requested the audio recording that was provided to the Clayton Crescent." (*Id*. at ¶ 29.)

- The public record of Mr. Bivins' assistance of Commissioner Davis was well known after (1) Victor Hill, with the assistance of Defendant Franklin, published on May 24, 2022, the police dispatch call in which Mr. Bivins was described by name, and (2) after the Clayton Crescent published an article on May 23, 2022, that specifically mentioned Mr. Bivins' support of and assistance to Mr. Davis / Mr. Bivins' opposition to Ms. Scott, as well as his marriage to Ms. Bivins. (*Id*. at ¶¶ 26-34.)

- At its monthly meeting on June 7, 2022—two weeks after the campaign sign incident—the Board of Commissioners, in a 3-2 vote led by Defendants Hambrick, Franklin, and Anderson, voted to terminate Ms. Bivins' contract with Clayton County ("the County"), terminate her employment, require her to remove her belongings within 48 hours, and declare her contract ultra vires. (*Id*. at ¶¶ 37-41.)

- "On her way into the meeting, Commissioner Franklin stated to Commissioner Anderson, '**It's going to be a good night tonight.**'" (*Id*. at ¶ 38.)

- "Declaring Ms. Bivins' Agreement *ultra vires* was Franklin's, Anderson's, and Hambrick's attempt to create a legal basis for the County to refuse to pay Ms. Bivins $84,853.86 in severance payments pursuant to Ms. Bivins' Agreement." (*Id*. at ¶ 42.)

- "There was no legal justification provided for declaring Ms. Bivins' Agreement *ultra vires* at the June 7 Board meeting." (*Id*. at ¶ 43.) Despite demands to Franklin, Anderson, and Hambrick for answers at subsequent Board meetings, the only rationale for Ms. Bivins' termination was provided by the commissioners' attorneys in response to legal proceedings.

- "When Commissioner Davis, who voted against termination, asked why Ms. Bivins [the County's CFO for nearly 10 years] was being fired, the Board members who favored her dismissal —Franklin, Anderson, and Hambrick — did not respond." (*Id*. at ¶ 44.)

- "[Chairman Jeffrey] Turner asked the Board to reconsider [its] vote. He then questioned where Bivins 'had fallen down on the job,' asking if there was a record of it. Neither Anderson, Franklin, nor Hambrick commented or answered the question. Turner—who authored Ms. Bivins' performance evaluations—said that there is no such record, stating her evaluations have been outstanding the last several years." (*Id*. at ¶ 46.)

- "A few minutes after the meeting, Commissioners Franklin and Anderson expressed glee at Ms. Bivins' termination and purportedly voided [the] Agreement. Franklin said to Anderson, '**I can sleep good tonight.**' In response, Anderson said, '**Do I need to get us a bottle?**'" (*Id*. at ¶ 48.)

- "Neither the County, Franklin, Anderson, nor Hambrick have publicly stated why Bivins was terminated." (*Id*. at ¶ 49.)

- "In contrast with their cold determination to dismiss Ms. Bivins without providing any explanation, Anderson, Franklin, and Hambrick demonstrated support for Ms. Bivins' job performance up until they publicly observed that Ms. Bivins' husband was affiliated with Davis's reelection campaign and/or that Ms. Bivins' husband was 'interfering' with Janice Scott's campaign activities and the suspected theft by her campaign workers. For example, Commissioner Anderson praised Ms. Bivins' work on the annual budget approximately two weeks before the sign incident occurred." (*Id*. at ¶ 50.)

- "Following the campaign sign incident, Anderson, Franklin, and Hambrick demonstrated a singular focus to use their power of elective office under color of state law to diminish the lives of Mr. and Ms. Bivins." (*Id*. at ¶ 51.)

- "The County, through Anderson, Franklin, and Hambrick, was motivated to terminate Ms. Bivins because she is married to Mr. Bivins and because Mr. Bivins and Ms. Bivins supported Commissioner Davis's election campaign." (*Id*. at ¶ 52.)

- "Following Chairman Turner's vocal opposition to the retaliatory termination of Ms. Bivins, on June 21, 2022, Clayton County, led by Commissioners Anderson, Franklin, and Hambrick, voted to strip Chairman Turner of significant responsibilities as Chairman of the Board as retribution for speaking out against the politically motivated termination [of] Ms. Bivins." (*Id*. at ¶ 59.)

- "The County, through Anderson, Franklin, and Hambrick, sought, and continues to seek, reimbursement for Ms. Bivins' tuition payments despite knowing that Ms. Bivins' Agreement permitted the County to pay Ms. Bivins' tuition for the

Vanderbilt courses and despite knowing that Anderson's investigation into the matter revealed that the payments were not unauthorized." (*Id*. at ¶ 74.)

- "After Anderson asked Mr. Stanford to help her investigate Ms. Bivins' tuition payments, Mr. Stanford offered to pay the County back for his tuition payments. When Ms. Anderson heard about this, she told Mr. Stanford, **'You don't have to do that. We're only going after Ramona.'**" (*Id*. at ¶ 76.)

- It is a reasonable inference that "We," as used by Anderson in ¶ 76, referred to *Anderson, Franklin, and Hambrick*, as they were the commissioners that voted 3-2 to go after Ms. Bivins, and not go after Mr. Stanford, for tuition payments. (*Id*. at ¶ 77.)

In her motion, Franklin ignores or baselessly labels as "conclusory" Plaintiff's well-pled facts regarding Franklin's retaliatory animus, but Plaintiff's Complaint contained ample facts that allege Franklin maintained an unconstitutional motive and was personally involved in the decisions to terminate and otherwise retaliate against Ms. Bivins because she was married to Charlton Bivins, thereby stating a §1983 claim against Franklin for First Amendment Retaliation. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (personal involvement in the constitutional tort is sufficient to allege causation under § 1983); *Gaines*, 871 F.3d at 1212–13. With respect to the unlawful, retaliatory motive of Anderson and Hambrick, Plaintiff incorporates her arguments to their respective motions. (Docs. 33; 34.) Because Plaintiff also sufficiently pled that a majority of the commissioners

11

(Anderson, Franklin, and Hambrick) acted and voted with an unconstitutional motive to retaliate against Ms. Bivins, Plaintiff also sufficiently stated a § 1983 claim against the County. *See Mason v. Village of El Portal,* 240 F.3d 1337, 1340 (11th Cir. 2001) ("[T]here can be no municipal liability unless all three members of the council who voted against reappointing [p]laintiff shared the illegal motive."); *Matthews v. Columbia Cnty.,* 294 F.3d 1294, 1298 (11th Cir. 2002) (stating and applying the same rule); (Doc 1 at ¶¶ 21-34, 37-52, 59, 74, 76, *inter alia*). Because Plaintiff met her burden under Rule 8, Franklin's motion should be denied.

## C.    Defendant Franklin does not have Qualified Immunity to bar recovery.

In ruling on qualified immunity, a court must first determine whether the complaint, taken in the light most favorable to the plaintiff, alleges facts which, if proven, would show that the public official violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If no constitutional right could have been violated, then there is no need to proceed to the second step. *Id.* Thus, as other courts have noted, a determination on a motion for failure to state a claim and the first step of the qualified immunity analysis merge when presented in a Rule 12(b)(6) motion. *GJR Investments, Inc. v. County of Escambia, Florida,* 132 F.3d 1359, 1366 (11th Cir.1998). If a court finds that a constitutional right was violated, then the court must determine whether that right

was clearly established in light of the specific context of the case. *Saucier,* 533 U.S.

at 201, 121 S.Ct. 2151.

Here, Plaintiff pled that she had the right to be married to her husband due to

the First Amendment's protections for intimate association, and that Hambrick's,

Anderson's, and Franklin's acts of terminating her from her government job and

otherwise retaliating against her, all because of her marriage, violated that right.

(Doc. 1 at ¶¶ 87-107.) In performing the qualified immunity analysis, the Eleventh

Circuit has stated as follows:

> The question in this case is not whether there is a First Amendment
> right to intimate association; there is. Nor is the question whether a
> public employee can be subjected to an adverse employment action for
> exercising that right; she can't. Nor is the question whether the
> employee will prevail if the adverse action infringed on her right to
> intimate association; she will.

*Gaines*, 871 F.3d at 1213.[1] The instant case rests on firm precedent from the U.S.

Supreme Court and the Eleventh Circuit that engaging in adverse employment action

against an employee because of her intimate relationship, such as marriage, violates

the employee's right to intimate association. *See, e.g., Id*.; *Roberts*, 468 U.S. at 617–

---

[1] The *Gaines* court went on to define the constitutional right in that case more
specifically and found that it was not clearly established that it will violate the First
Amendment's freedom of association right when a public employer fails to promote
an employee because the employee's *father* engaged in protected speech. *Id*.

18, 622; *McCabe,* 12 F.3d at 1563; *Cumming,* 24 F.3d at 1354; *Rotary Club of Duarte*, 481 U.S. 537; *Perry,* 408 U.S. 593.

As stated above, Plaintiff sufficiently pled that Franklin violated the First Amendment when she voted to terminate Ms. Bivins and otherwise retaliate against her because Ms. Bivins was married to Charlton Bivins. (Doc 1 at ¶¶ 21-34, 37-52, 59, 74, 76, *inter alia*.) In her Complaint, Plaintiff also cited binding U.S. Supreme Court and Eleventh Circuit caselaw to demonstrate that Defendants' First Amendment violations were clearly established. (Doc. 1 at n. 1-2 (citing *Roberts*, 468 U.S. 609; *Rotary Club of Duarte*, 481 U.S. 537; *McCabe,* 12 F.3d at 1562-63).) Like Hambrick and Anderson before her, Franklin completely ignores this caselaw in her brief. Indeed, it was clearly established in June 2022 that terminating or otherwise engaging in adverse action against a government employee because of who that employee chose to marry (let alone that her husband was engaged in political speech) violated the First Amendment's right to freedom of association, and Franklin is not entitled to qualified immunity. *See Id.*

Franklin's argument in support of qualified immunity is brief and lacking. Franklin merely argues that Plaintiff cannot meet the first step of the analysis (the "merits" prong), because she did not allege enough facts to demonstrate that Franklin had a retaliatory motive. As stated above, Plaintiff's alleged facts are more than

sufficient. While Franklin does not argue that her unlawful conduct alleged in the Complaint was not clearly established to be unlawful, Plaintiff affirmatively states that Franklin was on fair notice from Eleventh Circuit and U.S. Supreme Court precedent that it was a violation of the First Amendment to the U.S. Constitution for a government employer to terminate or otherwise engage in adverse action against an employee because of who that employee chose to marry. Because of this, and because Plaintiff pled ample facts to state her claim, Franklin is not entitled to qualified immunity, and Franklin's motion for judgment on the pleadings should be denied.[2]

**D.    Franklin's argument that Plaintiff's position of Chief Financial Officer was not properly created by the Clayton County Board of Commissioners does not defeat Plaintiff's First Amendment Retaliation claim.**

1. Plaintiff's termination from her nine-year employment with the County constituted adverse employment action, regardless of how her position was originally created.

Foremost, Plaintiff's First Amendment Retaliation claim can survive Franklin's motion—regardless of whether the position of CFO was properly created by the Board of Commissioners—because Ms. Bivins was *terminated* from her

---

[2] Defendants sought to remove the official capacity § 1983 claims against Franklin, Anderson, and Hambrick. Because Plaintiff also asserts a § 1983 claim against the County directly, Plaintiff consents to removing those claims.

employment and therefore suffered adverse employment action. "To be considered an adverse employment action in a First Amendment retaliation case, the complained-of action must involve an important condition of employment." *Stavropoulos v. Firestone*, 361 F.3d 610, 619 (11th Cir.2004), *cert. denied*, 544 U.S. 976, 125 S.Ct. 1850, 161 L.Ed.2d 727 (2005). "[The Eleventh Circuit] ha[s] decided that, as a matter of law, important conditions of employment include *discharges*, demotions, refusals to hire or promote, and reprimands." *Akins v. Fulton Cnty., Ga.*, 420 F.3d 1293, 1300 (11th Cir. 2005). This is a broad standard that proscribes myriad other conduct as well, and "[a] public employee states a case for retaliation when the alleged employment action would likely chill the exercise of constitutionally protected speech." *Id*. (citing *Stavropoulos* 361 F.3d at 618).[3]

Ramona Bivins worked as CFO of the County for nearly 9 years, and her discharge constituted adverse employment action. The procedures through which the Board *created* the position of CFO are simply irrelevant to the First Amendment analysis of whether Plaintiff suffered adverse employment action. As pled, Ms. Bivins was employed by Clayton County, performed work for Clayton County for nearly nine years, received regular performance evaluations, was paid salary and benefits, received a W-2 each year, and by the action of the Board, was terminated

---

[3] Franklin favorably cites *Akins* throughout in her brief.

from her position and given 48 hours to vacate her office. (Doc. 1, ¶¶ 9, 11-15, 39-40, 65.) By majority vote of the Board, her work ceased, her pay ceased, and her employment relationship with the County ended. *Id*. at ¶ 40. Plaintiff was therefore discharged by the County, and as a matter of law, she suffered adverse employment action necessary to support her First Amendment Retaliation claim. *Akins,* 420 F.3d at 1300; *Stavropoulos* 361 F.3d at 618. This should be the end of the "adverse employment action" analysis.

Instead, Franklin argues that Plaintiff's employment never existed, which, as Plaintiff explains below, she is barred from doing under the doctrine of equitable estoppel.

2. <u>Franklin and the County are estopped from arguing that Plaintiff's entire employment was *ultra vires* because they acquiesced to her employment, and enjoyed the benefits, for nearly nine years.</u>

In the five months since Ms. Bivins filed suit, Franklin crafted a creative and incredulous argument that Plaintiff could not have suffered adverse employment action because, according to Franklin, Plaintiff's position, and therefore her employment with the County, *never existed*. To make this fallacious argument, Franklin takes an exacto knife to the Board's efforts to create the CFO position in 2013, alleging—*with selective public records of her choosing*—that the Board made two mistakes when creating the position: (1) at the first Board meeting to consider

the ordinance creating the position, the Board merely read the ordinance, but did not duly adopt it, and (2) at the second Board meeting to consider the ordinance, the ordinance was duly adopted, but the Board met one day too early. Franklin uses these alleged procedural flaws to conclude that the position of CFO was not properly created by the Board, and therefore the County and Ms. Bivins never had a valid employment relationship, and therefore her employment never existed. The ludicrous non-logic continues to the conclusion that if Ms. Bivins' employment never existed, then she could not have been terminated, and therefore she did not suffer adverse employment action under the First Amendment. Glaringly, this crude argument does nothing to address the fact that Ms. Bivins *was* in fact terminated—and therefore suffered adverse employment action under the First Amendment. Furthermore, the County is barred from arguing that Ms. Bivins did not lawfully hold the CFO position due to the doctrine of equitable estoppel.

Under the doctrine of equitable estoppel, the County is estopped because it acquiesced to Ms. Bivins holding the position of CFO for nearly nine years, and during that time it enjoyed the benefits of her work managing the County budget to high praise from her colleagues, the Board, County citizens, and the region. The Georgia Supreme Court states this rule as follows: "A municipality is subject to the rules of estoppel in those cases wherein equity and justice require their application,

and may be estopped under certain circumstances by its act and conduct." *City of Summerville v. Georgia Power Co.,* 205 Ga. 843, 846, 55 S.E.2d 540, 543 (1949) (quoting 19 Am.Jur. 820 § 168). Furthermore,

> Although a municipality or other governmental agency cannot be estopped by its ultra vires acts, there is nevertheless a broad distinction to be observed between an irregular exercise of a granted power, and the total absence or want of power, and the rule is that it may be estopped, as right and justice may require, *where the act or contract relied on to create the estoppel was within its corporate powers, although the method of exercising the power was irregular or unauthorized.*

*Id.* (citing 21 C.J. 1195, § 195) (emphasis added). In *Georgia Power*, the City of Summerville entered a franchise contract for Georgia Power to construct and maintain an electric distribution system in the city, and then acquiesced in the use of the system and received its benefits for over 20 years. *Id.* When the County sought to have the contract invalidated based on its own failure—20 years prior—to properly publish the franchise application for a requisite ten days, Georgia Power argued that the County was estopped from doing so. The court agreed with Georgia Power and held that the contract was not *ultra vires* because (1) the County had the general power to grant Georgia Power the franchise, even if it failed to perfectly exercise that power exactly as the Charter prescribed, and (2) the County acquiesced to the use and benefits of the franchise for over 20 years without legal objection. *Id.* Here, the County indeed had the general powers to create the position of CFO, or

any employment position it desired, and it exercised those powers by its vote, even if it did so imperfectly. The County then enjoyed the benefits of the CFO position it created based on Ms. Bivins' excellent public service in that position for nearly nine years, and it made no legal objection to Ms. Bivins holding that position. To the contrary, the Board continuously increased Ms. Bivins' salary and entered into two contracts to incentivize her to stay. Like the City of Summerville in *Georgia Power*, the County is therefore estopped from arguing that Ms. Bivins was not employed by the County or that its contracts with her were invalid.

Even if this Court accepts Franklin's argument that Plaintiff's position was not properly created by the Board, that her contract was therefore *ultra vires*, and that the County is not estopped from taking this position (after it is sued), this is a subject that would require discovery and be premature for adjudication. Franklin's argument relies on stand-alone, self-selected public records, which require the rigorous scrutiny of discovery. For this reason, too, the Court should reject Franklin's argument that Plaintiff suffered no adverse employment action.

3. The case law Franklin cites to claim that Plaintiff suffered no adverse employment action is off base.

Franklin cites *Hoskins v. City of Orlando, Fla.*, 51 F.2d 901, 906 (5th Cir. 1931), for its statement that "estoppel [cannot] be invoked against a municipality to validate that which is unlawful or wholly ultra vires." *Hoskins* concerned the

enforceability of a municipality's purchase of a lease of real property—a subject that bears no relationship to the facts or law of Plaintiff's suit. In *Hoskins*, the plaintiff sought to enforce the monetary terms of his sale to the City of Orlando, Florida, of a 90-year lease of real property, and the City claimed that the sale was invalid because it exceeded the power of the City and did not follow the proper procedural steps. *Id*. There, the court rejected the concept that the City was estopped from being bound to the contract based on benefits received by the City, in part because the court found the contract for the 90-year lease was not for a valid public purpose, and was thus *ultra vires* and unenforceable. *Id*. Franklin apparently cites *Hoskins* prophylactically to ward off an argument she expects Plaintiff to make: that the County is estopped from asserting that Plaintiff's employment contract was invalid because it employed her for nearly nine years and received the benefit of her employment. Plaintiff, indeed, hereby makes that argument—the County *is* estopped from claiming that Plaintiff's employment contract is invalid when it received, and relied on, the benefits of that contract for several years. But further, even if this Court found that Plaintiff's contract was somehow unenforceable—Plaintiff's contract is effectively an extra layer of terms applicable to her employment—*it is not her employment itself*. Indeed, Plaintiff worked as CFO for the County for several years *without any employment contract at all*. (Doc. 1 at ¶ 72.) Under the binding case law

21

applicable to First Amendment Retaliation claims, Plaintiff pled that she suffered adverse employment action when her employment was terminated, and therefore Franklin's motion should be denied.

Franklin's use of *City of Baldwin v. Woodard & Curran, Inc*., 293 Ga. 19, 29 (2013), is similarly off base. *Woodard* involved a contractual relationship between the City of Baldwin, Georgia, and a wastewater treatment company, where the company sought to recover the value of work performed. *Id*. The court held that the relevant contract was *ultra vires* and unenforceable, because it was grossly in excess of what the city council had authorized. Therefore, the company could not recover under the contract or, alternatively, quantum meruit. *Id*. Franklin cites this case to support her argument that *Plaintiff* is "estopped from recovering under an equitable doctrine" even though the County paid her compensation and other benefits in exchange for her work. Here, foremost, Plaintiff seeks to recover from Franklin under § 1983 and breach of contract, not an equitable doctrine. Second, Plaintiff's First Amendment Retaliation claim does not rely on the County's procedural steps for creating her position, or even on her contract, but on the fact that she performed work for the County as a W-2 employee for nearly nine years and the County terminated her employment. Franklin cannot simply wave a magic wand and make

Ramona Bivins's past employment disappear, as if it never existed, to avoid liability for her retaliatory acts.

## III.    CONCLUSION

For all the aforementioned reasons, Franklin's arguments in support of her motion are premature or without firm legal or factual bases. Franklin's motion should be denied in its entirety.

Respectfully submitted this 31st day of March, 2023.

BUCKLEY BALA WILSON MEW LLP

By:    /s/ Andrew R. Tate
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@bbwmlaw.com
Andrew R. Tate
Georgia Bar No. 518068
atate@bbwmlaw.com

600 Peachtree Street NE
Suite 3900
Atlanta, GA  30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101
*Counsel for Plaintiff*

## **LR 7.1(D) FONT COMPLIANCE CERTIFICATION**

The undersigned counsel certifies that the within and foregoing **RESPONSE IN OPPOSITION TO DEFENDANT FELICIA FRANKLIN'S MOTION FOR JUDGMENT ON THE PLEADINGS** was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

This 31st day of March, 2023.

BUCKLEY BALA WILSON MEW LLP

/s/ Andrew R. Tate
Andrew R. Tate
Georgia Bar No. 518068

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| RAMONA THURMAN BIVINS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: |
| vs. | ) | 1:22-cv-04149-WMR |
| | ) | |
| FELICIA FRANKLIN, in her individual | ) | **JURY TRIAL DEMANDED** |
| and official capacities; | ) | |
| ALIEKA ANDERSON, in her individual | ) | |
| and official capacities; | ) | |
| GAIL HAMBRICK, in her individual | ) | |
| and official capacities; and | ) | |
| CLAYTON COUNTY, GEORGIA, | ) | |
| | ) | |
| | ) | |
|     Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2023, I electronically filed the above

**RESPONSE IN OPPOSITION TO DEFENDANT FELICIA FRANKLIN'S**

**MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of Court

using the CM/ECF system, which will automatically send email notification of such

filing to the following attorneys of record:

      A. Ali Sabzevari - asabzevari@fmglaw.com
      Kirsten S. Daughdril - kirsten.daughdril@fmglaw.com
      John D. Bennett - jbennett@fmglaw.com
      Jack R. Hancock - jhancock@fmglaw.com

Ken E. Jarrard - kjarrard@jarrard-davis.com
Melissa A. Tracy - mtracy@jarrard-davis.com
Randall C. Farmer - rfarmer@gdcrlaw.com
Dasha M. Jackson - djackson@gdcrlaw.com

**BUCKLEY BALA WILSON MEW LLP**

By:    */s/ Andrew R. Tate*
        Andrew R. Tate
        Georgia Bar No. 518068