IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RAMONA THURMAN BIVINS,         ) <br> ) <br> Plaintiff,         ) <br> ) <br> v.         ) <br> ) <br> FELICIA FRANKLIN, in her         ) <br> individual and official capacities;         ) <br> et.al,         ) <br> ) <br> Defendants.         ) | Civil Action Number: <br> 1:22-CV-04149-WMR |

### DEFENDANT FELICIA FRANKLIN'S REPLY BRIEF IN SUPPORT OF HER MOTION FOR JUDGMENT ON THE PLEADINGS

COMES NOW Defendant FELICIA FRANKLIN (hereinafter "Franklin"), in both her individual and official capacities, by and through her undersigned counsel, and hereby files this Reply Brief in Support of her Motion for Judgment on the Pleadings [Doc. 44] showing the Court as follows:

### I.   INTRODUCTION

Defendant Franklin moved for a judgment on the pleadings on the following grounds: (1) that Plaintiff cannot establish a *prima facie* case of First Amendment Retaliation because Plaintiff's position of CFO was not properly created by the Clayton County Board of Commissioners (the "Board"); (2) Plaintiff's Complaint does not contain sufficient factual allegation to support a claim for relief; and (3)

even if the Complaint's allegations adequately state a claim for relief, Defendant Franklin, in her individual capacity is entitled to qualified immunity.[1] In response to Defendant Franklin's motion, Plaintiff argues that the Complaint's allegations are adequate to demonstrate that Defendant Franklin personally participated in the commission of a constitutional tort, even though the allegations relied upon by Plaintiff show no such thing. Next, Plaintiff argues that Defendant Franklin is not entitled to qualified immunity, while failing to make the required showing that Franklin was "placed on notice" that her vote to declare Plaintiff's contract *ultra vires* (which is undoubtedly true) was a constitutional violation. Finally, Plaintiff downplays Clayton County's failure to properly create the CFO position or, alternatively, asserts that Defendant Franklin is prevented from asserting such a position based on equitable estoppel. On these final points, Plaintiff has flatly miscomprehended Georgia law regarding the consequences of a local government taking action bereft of lawful authority.[2]

---

[1] Defendant Franklin also argued that judgment on the pleadings as to the official capacity claim against her was appropriate because it was duplicative of the claim brought against Clayton County. Plaintiff has consented to removal of the official capacity claim against Defendant Franklin on that basis. *See* Doc. 49, fn. 2.

[2] Plaintiff, in her response, also makes the spurious allegation that the defendants "inexplicably staggered their dispositive motions such that they have perpetually delayed this case for five months." (Doc. 49, p. 1). Defendant Franklin takes umbrage at this remark. Defendants Clayton County and Gail Hambrick filed a pre-answer motion to dismiss and, upon consent of the parties, an order was also entered

2

## II.    REPLY ARGUMENTS AND CITATION OF AUTHORITIES

### A.    The Complaint does not allege facts establishing that Defendant Franklin acted with retaliatory animus such as would support a First Amendment Retaliation claim.

Plaintiff asserts that her Complaint contains facts demonstrating that her protected First Amendment activity – her intimate association with her husband – was the motivation for Defendant Franklin (1) voting to terminate Plaintiff's employment as Clayton County CFO and (2) declaring Plaintiff's employment contract *ultra vires*. It is true, as cited by Plaintiff, that to survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient factual matter to state a claim to relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). However, none of the factual allegations relied upon by Plaintiff in her response to Defendant Franklin's motion are sufficient to plausibly establish that Franklin acted with retaliatory animus. The factual allegations cited by Plaintiff do nothing more than rely on suspicion and unwarranted inference. Plaintiff's cobbled together house of cards plays to our most base instincts – by asking the Court to *take it as a matter of orthodoxy* that individuals with differing

---

staying discovery until resolution of that motion. A motions hearing was originally scheduled for March 17, 2022, but Plaintiff *consented* to continuing that hearing so that all motions, including Defendant Franklin's, could be heard together. As is emblematic of Plaintiff's lawsuit, Plaintiff attributes perniciousness to the benign.

political views must despise one another. Stated plainly, Plaintiff asks this Court to find a plausible claim of retaliation against Franklin by assigning perniciousness to the mundane, with Plaintiff taking it on faith that the Court will suffuse facially inoffensive statements with the scienter of malevolence. While Plaintiff might entreat "isn't it *possible* that Franklin's comments were evidence of animus[?]," possibility is not the standard! As stated by the Supreme Court, plausibility and possibility are not equivalent:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the **reasonable inference** that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. ***Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'***

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (citation omitted). Facts that create merely a "suspicion [of] a legally cognizable right of action" are not sufficient to survive a motion to dismiss for failure to state a claim. Twombly, 550 U.S. at 555. In this case, Plaintiff asks for relief on the theory that Franklin acted to terminate Plaintiff's employment and declare Plaintiff's employment contract *ultra vires* based on Plaintiff's exercise of her First Amendment right to intimate association. Each of the factual allegations cited to and relied on by Plaintiff do nothing to push the needle from possibility to plausibility.

4

The allegations relied on by Plaintiff, and their 'suggested' implication, are as follows:

- Defendant Franklin was aware that Plaintiff was married to Charlton Bivins. (Doc. 1 at ¶¶ 21–22). Charlton Bivins supported incumbent candidate DeMont Davis for a seat on the County Commission, while Defendant Franklin supported a different candidate, Janice Scott. Id. at ¶¶ 23, 25.³ Support for differing political candidates, alone, is not enough to establish that retaliatory animus is more than a mere possibility. This allegation, and the inferences associated with it, should be rejected by the Court. They are little more than a manifestation of our broken political culture where some advance the tragic proposition that political differences are synonymous with enmity.

- An incident occurred in May 2022 that involved an alleged theft of Davis campaign signs by Scott campaign workers. Id. at ¶ 26. ***There is no allegation that Defendant Franklin was involved in the alleged theft***. Defendant Franklin's only connection to the sign incident was in apparently obtaining an audio recording of Commissioner Davis's phone call to the Clayton County Police Department regarding the alleged sign theft and providing that recording to a local newspaper.

---

³ Allegations relating to former Clayton County Sheriff Victor Hill's support of Davis's opponent are wholly irrelevant to Defendant Franklin's involvement in this matter.

5

Id. at ¶¶ 28, 29. There is no allegation that Defendant Franklin's actions in obtaining publicly available information were illegal or improper.

- Two weeks after the campaign sign incident, on June 7, 2022, the Board voted 3-2 to terminate Plaintiff's contract with Clayton County, terminate Plaintiff's employment as CFO, and declare Plaintiff's contract with the County *ultra vires*. Id. at ¶¶ 40–41. Defendant Franklin was one of the three "yes" votes. There is no allegation that Defendant Franklin and the other two Commissioners voting to terminate shared a wrongful retaliatory motive in making their votes, and there are no allegations – rising to the level of more than a mere possibility or suspicion – as to Defendant Franklin possessing a wrongful motive to terminate Plaintiff's employment and declare the contract *ultra vires*.

- Defendant Franklin is alleged to have stated "It's going to be a good night tonight" prior to the June 7th meeting and "I can sleep good tonight" after the meeting. Id. at ¶¶ 38, 48. For Plaintiff to take such flatly banal statements and endeavor to use them in this case is folly. Even assuming Franklin said those precise words, there is nothing other than sheer speculation to suggest their connection to Plaintiff's termination. Stating that one hopes to "sleep well tonight" is uttered by millions following an honest day's work. Plaintiff's effort to leverage such an innocent phrase into legal significance simply misses the mark.

- The Complaint alleges that Defendant Franklin's vote to declare Plaintiff's contract *ultra vires* was without legal justification and merely an attempt to create a legal basis for the County to refuse to pay Ms. Bivins' severance under the contract. Id. at ¶¶ 42–43. Even if true, such an allegation does not establish that Defendant Franklin acted with a retaliatory motive based on Plaintiff's protected intimate association with her husband. At most, it could plausibly suggest that Defendant Franklin cast her vote (whether imprudently or not) in an attempt to protect the County's financial coffers from an unwarranted severance payout. Moreover, since the contract was/is ultra vires, Franklin's good stewardship should be applauded.[4]

- Defendant Franklin did not provide responses to Commissioner Davis or Chairman Turner regarding the reason she voted in favor of the termination, and Franklin has not stated publicly her reasons for her vote. Id. at ¶¶ 46, 48–49. Defendant Franklin was under no obligation to explain her vote and any perceived failure to do so does not support a plausible conclusion that her actions were motivated out of retaliation for Plaintiff's protected expression.

- The Complaint alleges that, following the campaign sign incident, Defendant Franklin, together with Co-Defendants Anderson and Hambrick "demonstrated a

---

[4] Even assuming the contract was legal, the only potential ramification of not paying Plaintiff severance due under the contract would be an action for breach of contract solely against the County under state law. Recognizing this, Plaintiff did incorporate a claim for breach against the County in her Complaint. See Doc. 1, pp. 24–25.

7

singular focus to use their power of elective office under color of state law to diminish the lives of Mr. and Mrs. Bivins." Id. at ¶ 51. Further, it is alleged that Defendant Franklin "was motivated to terminate Ms. Bivins because she was married to Mr. Bivins and because Mr. Bivins and Ms. Bivins supported Commissioner Davis's election campaign." Id. at 52. These "facts" are "mere conclusions" which "are not entitled to the assumption of truth." Ashcroft, 556 U.S. at 664.[5]

The remaining allegations of the Complaint relied upon by Plaintiff are either irrelevant to the elements of Plaintiff's cause of action or do not implicate Defendant Franklin's conduct or actions. For example, Defendant Franklin's legislative actions as relevant to Chairman Turner's responsibilities are wholly irrelevant to whether Plaintiff can state a claim for violation of her First Amendment protections. (Doc. 1 at ¶ 59). And, allegations related to the conduct of others cannot implicate an improper motive on the part of Defendant Franklin. See Id. at ¶¶ 74, 76. In short, while Plaintiff attempts to assign much melodrama to the events detailed in the

---

[5] Plaintiff responds to the argument that the Complaint does not adequately establish that all three Commissioners voting in favor of Plaintiff's termination shared a retaliatory motive by incorporating her response arguments already in the record. (Docs. 33, 34). Thus, Plaintiff appears to admit that if the Complaint does not state a claim against *any one* of the three individual defendants, dismissal should be required. See Rolle v. Worth County School District, 128 Fed. Appx. 731, 733 (11th Cir. 2005); see also Mason v. Village of El Portal, 240 F.3d 1337, 1340 (11th Cir 2001). Plaintiff cites to Mason in her response.

8

Complaint, the actual <u>factual</u> allegations in the Complaint fail to establish a plausible claim for relief against Defendant Franklin. As such, Plaintiff's claims against Defendant Franklin should be dismissed.

### B. **Defendant Franklin is entitled to qualified immunity.**

As stated in Defendant's prior brief, when a defendant asserts qualified immunity for actions undertaken in the scope of her discretionary authority, it is Plaintiff's burden to "establish that (1) [her] complaint pleads a plausible claim that the defendant violated [her] federal rights (the "merits" prong), and that (2) precedent in this Circuit at the time of the alleged violation "clearly established" those rights (the "immunity" prong)." <u>Carollo v. Boria</u>, 833 F.3d 1322, 1328 (11th Cir. 2018). Plaintiff concedes that the analysis on the "merits" prong is merged with the analysis of a Rule 12(b)(6) motion for failure to state a claim. (Doc. 49 at p. 12 (citing <u>GJR Investments, Inc. v. County Escambia, Florida</u>, 132 F.3d 1359, 1366 (11th Cir. 1998)). Thus, for all the reasons stated in Section A, *supra*, Plaintiff cannot succeed on the merits prong as she fails to demonstrate a plausible claim that Defendant violated her First Amendment rights to intimate expression.

As to the immunity prong, Plaintiff stresses that the U.S. Supreme Court and the 11th Circuit have repeatedly held that "engaging in adverse employment action against an employee because of her intimate relationship, such as marriage, violates the employee's right to intimate association." (Doc. 49, p. 13). Defendant Franklin

9

does not dispute that this is a correct, generalized statement of the law. However, Plaintiff cannot rely on such generalized statements. Rather, the Court must determine whether, at the time of the alleged violation, that the right in question was clearly established "in light of the specific context of the case, not as a broad general proposition." Watkins v. Cent. Broward Reg'l Park, 799 F. App'x 659, 666 (11th Cir. 2020) (quotation omitted). Here, Plaintiff fails to explain how she can meet the "clearly established" prong of the test when considered through the lens of the specific context of this case. Namely, the Complaint alleges, and the Defendants admit, that Plaintiff's contract was declared *ultra vires*. This provides an alternative, lawful basis for Defendant Franklin's vote in favor of non-renewal of Plaintiff's employment contract and Plaintiff's immediate termination. "[T]he dispositive question is whether the law at the time of the challenged conduct gave the government official fair warning that his conduct was unconstitutional." Baxter v. Roberts, 54 F.4th 1241, 1263 (11th Cir. 2022) (quotation omitted.). Plaintiff points to no law which would offer Defendant Franklin fair warning that her conduct would be considered unlawful when confronted with the need to vote on the issue of an *ultra vires* contract and the County's lawful authority to continue to employ Plaintiff as the County CFO. Plaintiff cannot carry her burden to overcome Defendant Franklin's entitlement to qualified immunity and Defendant is entitled to dismissal on the claims against her on that basis.

### C. Plaintiff's argument that the County's failure to properly create the position of CFO does not affect the validity of her claim must fail.

In support of her Motion for Judgment on the Pleadings, Defendant Franklin demonstrated, via the certified minutes of the Board, that the Board did not follow the mandates of the Georgia Constitution when, in 2013, it attempted to create the position of CFO by amending its local acts by ordinance. See GA. CONST. Art. 9, § 2, ¶ I. This failure to properly create the position of CFO yields the conclusions that (1) Plaintiff was not entitled to hold the position of CFO, and (2) the Board was not authorized to enter into a contract (with any individual) to fulfill that role. Without a valid entitlement to hold the position of CFO, Plaintiff cannot prevail on a claim that she experienced adverse employment action in the context of her First Amendment retaliation case, and dismissal should be required.

Plaintiff argues that the legal invalidity of the CFO Position is irrelevant to the analysis of whether Plaintiff can demonstrate an adverse employment action. Plaintiff first asserts that Defendant Franklin and Clayton County should be estopped from arguing that Plaintiff's employment was *ultra vires* because the County enjoyed the benefit of Plaintiff's employment for nearly nine years. As a second point, Plaintiff argues that, even if Plaintiff's employment agreement was invalid, Plaintiff's employment was not reliant on the existence of the contract, such that she can still pursue recovery for her First Amendment retaliation claim.

11

1. <u>The theory of equitable estoppel does not operate to bar Defendant Franklin from arguing that Plaintiff was not lawfully employed by the County.</u>

Plaintiff's characterization of Defendant Franklin's argument as taking an "exacto knife" to the Board's efforts to create the CFO position in 2013 in unavailing. There is nothing hyper-technical or selective in demanding that a county's local governing authority comply with the mandates of the Georgia Constitution and the limits of the governing authority's power under the law. "Neither the counties of this state nor their officers can do any act, make any contract, nor incur any liability not authorized by some legislative act applicable thereto." <u>Mobley v. Polk Cnty.</u>, 242 Ga. 798, 801, 251 S.E.2d 538, 541 (1979). Furthermore, "[i]f there is reasonable doubt of the existence of a particular power, the doubt is to be resolved in the negative." <u>Id</u>. Thus, in order for the Board to employ Plaintiff as its CFO, the Board must have been empowered to do so by a specific legislative act. Adoption of a "specific legislative act" is exactly what the Board tried to accomplish in attempting to exercise its Home Rule Powers in 2013, as authorized by the Georgia Constitution. <u>See</u> GA. CONST. Art. 9, § 2, ¶ I. As supported by the certified minutes attached to Defendant Franklin's First Amended Answer [Doc. 30], the Board failed to comply with the plain language of the Georgia Constitution, with the result that the Board *never* had the authority to employ a CFO, whether that be Plaintiff or any other individual. Contrary to Plaintiff's assertions, there is nothing

illogical or ludicrous in focusing on the effect of the Board's legislative errors when it attempted to create the CFO position.

However, Plaintiff urges that Defendant Franklin and the County should be estopped from relying on the Board's failings based on the doctrine of equitable estoppel. Plaintiff relies on the Georgia Supreme Court's opinion in <u>Summerville v. Georgia Power Co.</u>, 205 Ga. 843, 55 S.E.2d 540 (1949) for the proposition that the County may be estopped "as right and justice may require, where the act or contract relied on to create the estoppel was within its cooperate powers, although the method of exercising the power was irregular or unauthorized." <u>Id</u>. at 846. However, the present case is easily distinguishable from the facts of <u>Georgia Power</u> because, in that case, the City of Summerville acted pursuant to the authority of a ***specific*** legislative act. In that case, the question concerned whether a franchise agreement between the City of Summerville and Georgia Power was valid even though the City had failed to properly publish the franchise application as required by the City Charter. <u>Id</u>. It was undisputed that the City Charter – as set out by a legislative act of the General Assembly (Ga. L. 1909, p. 1376) – enumerated the power to grant franchises to the City. <u>Id</u>. at 845. In the present case, there is no such enumerated power which would allow the Board to create the position of CFO, which is the reason that the County needed to use its Home Rule Power under the Georgia Constitution. Plaintiff's argument that equitable estoppel should apply cannot

overcome the general principle that a local government "cannot be estopped by its ultra vires acts." Id. at 846.[6]

Plaintiff also argues that a determination on whether Plaintiff's employment was *ultra vires* (on the basis of the Board's failure to comply with the Georgia Constitution's Home Rule Provisions) is premature and would require discovery. It is hard to understand how Plaintiff can characterize the certified minutes of the Board as requiring "the rigorous scrutiny of discovery." The certified minutes of the Board are self-authenticating public records, and their contents speak for themselves. There is no reason that the Court cannot rule on this issue as a preliminary matter.

2. Plaintiff did not suffer an adverse employment action.

Plaintiff's final argument is that, even if Plaintiff's contract was *ultra vires* she should still be entitled to claim that she experienced an adverse employment action. However, it is incongruous to believe that Plaintiff would be entitled to pursue a claim related to the loss of employment when that employment did not lawfully exist. Put another way, how can there be an adverse employment action when there is no legal basis for employment as a matter of law?

---

[6] See also Corey Outdoor Advertising, Inc. v. Board of Zoning Adjustments of City of Atlanta, 254 Ga. 221 (Ga. 1985) ("There is no such doctrine known to the law as a set-off of wrongs. Not even estoppel can legalize or vitalize that which the law declares unlawful and void. If so, the conduct of individuals, whether independently or collusively, could render any and all laws invalid and impotent.")

While it is true that Defendant Franklin voted in favor of a motion to terminate Plaintiff's employment with the County, that vote must also be viewed in concert with the vote to declare Plaintiff's employment contract *ultra vires* and the authorities already presented which establish that no one was entitled to hold the position of CFO. Plaintiff urges the Court to disregard these facts and find that Plaintiff should be entitled to pursue her claim on the basis that she suffered an adverse employment action. However, Plaintiff fails to explain how this situation can be construed as an adverse employment action where Plaintiff had no legal right to *continue* her employment as CFO. It is well settled that adverse employment actions include those actions "that affect continued employment or pay," Davis v. Legal Servs. Alabama, Inc., 19 F.4th 1261, 1266 (11th Cir. 2021) (quotation omitted). But, in this case, Defendant Franklin's actions in participating in the vote to deny renewal of Plaintiff's contract and declare the contract *ultra vires*, are, ultimately, not the reason that Plaintiff is prohibited from continuing employment as CFO; rather, the reason Plaintiff cannot continue employment is because the Board never had the authority to employ her in that role in the first place.

### III.  CONCLUSION

Based on the foregoing, together will all other pleadings of record, Defendant Franklin respectfully requests that her Motion for Judgment on the Pleadings be granted.

Submitted this 28th day of April, 2023.

*/s/     Melissa A. Tracy*
Ken E. Jarrard
Georgia Bar No. 389550
Melissa A. Tracy
Georgia Bar No. 714477

*Counsel for Defendant Felicia Franklin*

JARRARD & DAVIS, LLP
222 Webb Street
Cumming, Georgia 30040
(678) 455- 7150
kjarrard@jarrard-davis.com
mtracy@jarrard-davis.com

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the within and foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point Times New Roman type face.

*/s/     Melissa A. Tracy*
Melissa A. Tracy
Georgia Bar No. 714477
mtracy@jarrard-davis.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date electronically filed the foregoing **DEFENDANT FELICIA FRANKLIN'S REPLY BRIEF IN SUPPORT OF HER MOTION FOR JUDGMENT ON THE PLEADINGS** in the above-styled civil action with the Clerk of Court by using the Court's CM/ECF system, which will automatically send notice of same to the attorneys of record. Additionally, a true and correct copy of same has been delivered to the following counsel of record:

Edward D. Buckley
Buckley Bala Wilson Mew LLP
Bank of America Plaza, Suite 3900
600 Peachtree Street NE
Atlanta, GA 30308
edbuckley@bbwmlaw.com

Randall C. Farmer
Gregory, Doyle, Calhoun & Rogers, LLC
49 Atlanta Street
Marietta, GA 30060
rfarmer@gregorydoylefirm.com

Kirsten S. Daughdril
A. Ali Sabzevari
Jack R. Hancock
Freeman Mathis & Gary, LLP
100 Galleria Parkway
Ste. 1600
Atlanta, GA 30339
kirsten.daughdril@fmglaw.com
asabzevari@fmglaw.com
jhancock@fmglaw.com

This 28th day of April, 2023.

*/s/     Melissa A. Tracy*
Melissa A. Tracy
Georgia Bar No. 714477
mtracy@jarrard-davis.com
